F I L E D
United States Court of Appeals
Tenth Circuit

MAY 6 2003

PATRICK FISHER
Clerk

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

LOUISE GILBERTSON,

        Plaintiff-Appellant,

v.

ALLIED SIGNAL, INC. and LIFE
INSURANCE COMPANY OF
NORTH AMERICA,

        Defendants-Appellees.

No. 01-2324

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO
### (D.C. NO. CIV-99-1065 LH/LFG)

Michael D. Armstrong, Albuquerque, New Mexico, for Plaintiff-Appellant.

Carol Lisa Smith of Krehbiel, Bannerman & Williams, P.A., Albuquerque, New
Mexico, for Defendant-Appellee Allied Signal Inc.; Tracy M. Jenks of Rodey,
Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico, for Defendant-
Appellee Life Insurance Company of North America.

Before **SEYMOUR** and **McCONNELL** , Circuit Judges, and **KRIEGER** , District
Judge. [*]

**McCONNELL** , Circuit Judge.

---

[*]The Honorable Marcia S. Krieger, United States District Judge for the
District of Colorado, sitting by designation.

The question in this case is whether an ERISA plan administrator's denial of disability benefits is entitled to deference when the administrator failed to render a decision within the time limits and the claim was "deemed denied" by operation of law.

BACKGROUND

Louise Gilbertson began working for AlliedSignal as an Administrative Support Coordinator in 1992. In March, 1998, Mrs. Gilbertson consulted her family physician, Dr. Gwen Robinson, complaining of chronic pain in her neck, shoulders, and arms, as well as frequent headaches, sleep disturbance, and difficulty concentrating. Based on these symptoms, and on the discovery of certain "pressure points" in Mrs. Gilbertson's neck, shoulders, arms, and legs, Dr. Robinson rendered a diagnosis of fibromyalgia.[1] Mrs. Gilbertson took short-term disability leave, which lasted through September 30, 1998. On that date, AlliedSignal terminated her employment.

---

[1] "A group of common nonarticular disorders characterized by achy pain, tenderness and stiffness of muscles, areas of tendon insertions and adjacent soft-tissue structures." *The Merck Manual* 481 (17th ed. 1999). Since fibromyalgia only manifests itself through clinical symptoms, there are no laboratory tests that can confirm the diagnosis. *See Dorsey v. Provident Life and Accident Insurance Co.* 167 F.Supp.2d 846, 855 (E.D. Pa. 2001), *citing Harrison's Principles of Internal Medicine* 1706-07 (Kurt J. Isselbacher *et al.* eds. 13th ed. 1994).

Following her termination, Mrs. Gilbertson promptly applied for long-term disability (LTD) benefits under AlliedSignal's Salaried Employees Pension Plan (the Plan). The Plan is covered by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq*. The Plan names AlliedSignal as the Plan Administrator and provides the Administrator with discretionary authority to administer the plan, interpret its terms, and delegate its authority to third parties. AlliedSignal hired a third party claims administrator, Life Insurance Company of North America (LINA), to administer the plan and to determine eligibility for benefits.

In support of her application for LTD benefits, Mrs. Gilbertson submitted documentation prepared by Dr. Robinson setting forth the diagnosis of fibromyalgia. LINA then requested that Dr. Robinson provide additional information, including any abnormal clinical test results. In her response, Dr. Robinson submitted test results, including blood analysis and urinalysis, all of which were normal, and reaffirmed her diagnosis of fibromyalgia based on trigger points and Mrs. Gilbertson's reported symptoms. Dr. Robinson also provided treatment records, in which Mrs. Gilbertson reported that, though her condition had improved somewhat due to her participation in water aerobics, tai chi, and chiropractic treatments, she remained unable to return to work.

On December 9, 1998, LINA denied Mrs. Gilbertson's application for long term disability benefits on the ground that she had failed to provide adequate objective medical evidence demonstrating that she was disabled according to the Plan's definition.[2] In the denial letter, LINA explained that, though Mrs. Gilbertson's supporting documentation indicated symptoms of fibromyalgia, it did not adequately address how those symptoms affected her capacity to perform her work.  LINA also noted that the documentation did not explain how symptoms of more than fifteen months' duration had suddenly rendered her unable to work and that Dr. Robinson's notes actually indicated some improvement from exercise and other treatments.

The denial letter notified Mrs. Gilbertson of her right to request that LINA review the denial.  The letter encouraged Mrs. Gilbertson to submit additional information promptly, because LINA would issue a final decision within either 60

---

[2]The Plan defines "disability" as:

> [A]ny physical or mental condition which, in the judgement
> [*sic*] of the Plan Administrator, based on evidence satisfactory
> to the Plan Administrator–
> (a) will prevent the Member from engaging in his normal
> occupation or a substantially comparable occupation; and
> (b) will prevent the Member, after he has been disabled for two
> years, from performing any occupation for which he is suited
> by training and education.

Appellant's App. 108.

days of receiving a request for review, or 120 days, if LINA specified that special

circumstances required the extra time. LINA's explanation of this timeline

mirrors a provision in the Plan requiring the administrator to make a final

decision within the applicable 60- or 120-day deadline. The Plan provision in

turn follows a Department of Labor ERISA regulation that articulates the

applicable deadline and provides further that claims not decided within the

deadline are "deemed denied" on review:

> (1)(i) A decision by an appropriate named fiduciary shall be made
> promptly, and shall not ordinarily be made later than 60 days after
> the plan's receipt of a request for review, unless special
> circumstances . . . require an extension of time for processing, in
> which case decision shall be rendered as soon as possible, but not
> later than 120 days after receipt of a request for review.
> . . .
> (4) . . . If the decision on review is not furnished within such time,
> the claim shall be deemed denied on review.

29 C.F.R. § 2560.503-1(h) (1999).[3]

On January 14, 1999, LINA received Mrs. Gilbertson's request for review.

LINA responded on January 28, assuring Mrs. Gilbertson that she would be

notified of a final decision within 60 days of LINA's receipt of the request. On

February 16, LINA sent a fax to Mrs. Gilbertson extending the deadline for

---

[3]We refer to the Code of Federal Regulations as of 1999. The quoted regulation, 29 C.F.R. § 2560, was amended in 2000, but the amendments apply only to claims filed on or after January 1, 2002. The amendments, among other changes, cut the deadline for review of denials of disability claims to 45 days.

additional submissions of medical information until March 31. The February 16 fax was the last communication Mrs. Gilbertson received from LINA.

Mrs. Gilbertson hired an attorney, who sent a letter to LINA on February 25 notifying LINA of his representation. On March 25, Mrs. Gilbertson's attorney provided LINA with additional medical records from Mrs. Gilbertson's chiropractor, Dr. Bender, and statements from Mrs. Gilbertson's family, friends, and supervisor attesting to her disabled condition. On April 7, one week after the agreed upon deadline for such submissions, Mrs. Gilbertson's attorney provided more material from Dr. Robinson documenting Mrs. Gilbertson's fibromyalgia and explaining how its symptoms prevented her from performing her prior job at AlliedSignal.

LINA apparently took no action on the claim until early May, when the company referred the file to its medical consultant, Dr. Thomas Franz, for review. On May 25, Dr. Franz provided LINA with his Physical Case Review. Dr. Franz agreed that Mrs. Gilbertson's symptoms met the criteria for fibromyalgia, but he found the functional limitations asserted by Mrs. Gilbertson and her doctors to be implausible and inconsistent with her ability to derive therapeutic benefit from aerobics and tai chi. His review recommended that Mrs. Gilbertson be scheduled for an independent medical examination to include functional capability testing. Dr. Franz's report was not communicated to Mrs. Gilbertson or her attorney, nor

did they receive any other communication from LINA or AlliedSignal regarding the claim.

On June 1, Mrs. Gilbertson's attorney sent a letter to LINA asking the company to advise whether it would accept or reject the claim. LINA opted to do neither, deciding instead to refer Mrs. Gilbertson for an independent examination. LINA, however, neglected to inform Mrs. Gilbertson or her attorney of this decision, and she therefore had no way of knowing the status of her claim. Finally, on August 20, Mrs. Gilbertson received a certified letter from HealthSouth, an institution hired by LINA to perform the independent medical examination, informing her that she was scheduled for an appointment on September 9. Mrs. Gilbertson canceled the HealthSouth appointment and, treating her claim as having been "deemed denied" by operation of the regulatory deadline for decision on an appeal, filed suit on August 25.

In federal district court, LINA and AlliedSignal moved for summary judgment, arguing that LINA's denial of benefits was entitled to judicial deference under the arbitrary and capricious standard. Mrs. Gilbertson contended that LINA's failure to meet the ERISA deadline should trigger *de novo* review. The district court acknowledged that LINA had failed to meet the deadline, but nevertheless applied the deferential standard of review. The district court seems to have determined, based on the cases cited by the parties, that where an

administrator with discretionary authority renders an initial decision and does not subsequently change its reasoning, the courts should apply a deferential standard even if the appeal is "deemed denied" as a result of delay. The district court also found it important that Mrs. Gilbertson herself had "acted outside the Plan's time limits" in that she asked for extensions of the deadline to submit materials, continued to submit materials past the agreed-upon deadline, and in general "continued to participate in the appeals process." Order Granting Defendants' Motion For Summary Judgment, dated November 11, 2000, at 7, Appellant's App. 86.

The district court therefore reviewed LINA's "deemed denied" decision under the arbitrary and capricious standard. It found substantial evidence in the record supporting the denial and granted summary judgment to LINA and AlliedSignal. Mrs. Gilbertson now appeals the grant of summary judgment, arguing that the proper standard of review in this case is *de novo*. We agree.

DISCUSSION

I. Standard of Review

Mrs. Gilbertson's complaint arises under 29 U.S.C. § 1132(a), which provides that a beneficiary may bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to

clarify his rights to future benefits under the terms of the plan." Although ERISA does not explicitly specify the standard of review that district courts should employ in reviewing such claims, the Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). Where the Plan grants such discretionary authority to the administrator, the court reviews the administrator's denial according to an "arbitrary and capricious" standard. *Chambers v. Family Health Corp.,* 100 F.3d 818, 825 (10th Cir. 1996).

AlliedSignal's Plan expressly vests discretionary authority to determine benefits eligibility in the Plan Administrator (AlliedSignal), who has delegated its discretion to LINA. Such delegation is permitted by the Plan. Therefore, because the Plan, albeit indirectly, grants discretionary authority to LINA, LINA's decisions on benefit claims should generally be reviewed under the arbitrary and capricious standard.

Mrs. Gilbertson contends, however, that the arbitrary and capricious standard is inapplicable when the claim has been automatically "deemed denied" by operation of ERISA regulations. She takes the position that if the administrator fails to issue a decision before the applicable deadline as required

-9-

by ERISA, and the claim is thereby "deemed denied," the court must review the denial *de novo*.

The parties' positions as to when Mrs. Gilbertson's claim could be "deemed denied" as provided in ERISA regulations are somewhat unclear. Mrs. Gilbertson seems to argue that the claim should be deemed denied as of 60 days after LINA's receipt of the appeal on January 14. This, however, is not necessarily the proper date. The regulations provide for an additional 60 days if the administrator articulates a special need. 29 C.F.R. § 2560.503-1(h) (1999). Mrs. Gilbertson requested and was granted an extension of the deadline by which she was required to submit supporting medical documentation to March 31. LINA's grant of the extension could be construed either as notice to Mrs. Gilbertson that LINA would need the extra 60 days or as a tacit agreement between both parties to re-start the clock on March 31 (the deadline) or April 7 (the date of Mrs. Gilbertson's final submission). This latter interpretation is supported by Mrs. Gilbertson's written request for review, in which she states, "I understand that I will receive a decision on my claim no later that [*sic*] 120 days after I provide you with the additional information that is being gathered." Appellant's App. 278. The deemed denied date could therefore be as late as late July or August.[4]

_____

[4]The old ERISA regulations that govern this case are silent as to whether the time limits for a decision on review should be tolled until the claimant has

(continued...)

The exact date does not really matter in this case because LINA never issued a decision denying Mrs. Gilbertson's appeal. LINA and AlliedSignal have conceded their failure to render a decision prior to the deadline (whatever it is) and do not contest Mrs. Gilbertson's contention that the claim must be "deemed denied" pursuant to ERISA regulations. Nevertheless, LINA and AlliedSignal argue that the "deemed denial" of an ERISA claim does not affect the deferential standard of review.

The question presented is therefore whether a plan administrator with discretionary authority whose delay in deciding a claim results in its being "deemed denied" is entitled to judicial deference. The issue is of first impression in this circuit. We hold that when substantial violations of ERISA deadlines result in the claim's being automatically deemed denied on review, the district court must review the denial *de novo*, even if the plan administrator has discretionary authority to decide claims.

The Supreme Court's ruling in *Firestone* seems to require this holding. *Firestone* establishes *de novo* review as the default standard for reviewing ERISA

---

[4](...continued)
finished submitting additional information. The new, amended regulations provide that "the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information." 29 C.F.R. § 2560.503-1(h)(4) (2002).

claims, with deferential review only in those instances where an administrator's decision is an exercise of "a *discretion vested in them by the instrument* under which they act." *Firestone,* 489 U.S. at 111 (emphasis in original) (internal quotations omitted). Therefore, to be entitled to deferential review, not only must the administrator be given discretion by the plan, but the administrator's decision in a given case must be a valid exercise of that discretion. It follows that where the plan and applicable regulations place temporal limits on the administrator's discretion and the administrator fails to render a final decision within those limits, the administrator's "deemed denied" decision is by operation of law rather than the exercise of discretion, and thus falls outside the *Firestone* exception. When the administrator fails to exercise his discretion within the required timeframe, the reviewing court must apply *Firestone's* default *de novo* standard.

The underlying rationale articulated by the Supreme Court in *Firestone* also supports this holding. Because ERISA is silent with respect to the standard of review, the court looked to applicable common law principles to decide the question. *Firestone* held that ERISA's language, legislative history and interpretive precedents required that "[in] determining the appropriate standard of review . . . , we are guided by principles of trust law." *Firestone*, 489 U.S. at 110 (citations omitted). Thus, the *Firestone* decision was essentially an application of the common law of trusts to judicial review of ERISA claim denials. Trust law

traditionally did not sanction judicial interference with a trustee's discretion when the original parties, by means of the trust instrument, authorized the trustee to exercise discretionary powers. *Id.* at 111 (*citing Restatement (Second) of Trusts §* 187 (1959)). The purpose of this principle is evident: trust settlors and trustees may, for a number of reasons, prefer that the trustee render individualized, discretionary-type decisions without a court second-guessing the trustee's judgments. The most obvious reason for such an arrangement is that the trustee's or administrator's expertise and familiarity with the overall scheme, as well as the details of each case, make him more likely to get the decision right than a court.

This purpose, however, is not served by judicial deference to automatically "deemed denied" decisions. Such decisions are not exercises of discretionary power vested in the trustee, as intended by the trust instrument, because in these instances the terms of the plan and its governing regulations require that a decision be rendered within a specified time. Deference to the administrator's expertise is inapplicable where the administrator has failed to apply his expertise to a particular decision. Thus, because LINA never used its discretionary authority to make and issue a final, reasoned decision on Mrs. Gilbertson's appeal, LINA has provided no actual exercise of discretion or application of reasoned judgment to which a court can defer.

Our holding is in harmony with a recent decision of the Ninth Circuit, *Jebian v. Hewlett Packard Company,* 310 F.3d 1173 (9th Cir. 2002). In *Jebian*, a plan administrator denied an employee's claim for long term disability benefits after the claim had already been "deemed denied" under the terms of the plan and applicable ERISA regulations. The district court reviewed the denial under the arbitrary and capricious standard because the plan vested the administrator with the discretionary authority that, under *Firestone*, triggers arbitrary and capricious review. *Jebian*, 310 F.3d at 1176-77. The Ninth Circuit reversed, holding that where "a claim is 'deemed . . . denied' on review after the expiration of a given time period, there is no opportunity for the exercise of discretion and the denial is reviewed *de novo*." *Id.* at 1177.

The *Jebian* court also relied heavily on the logic of *Firestone* to reach its conclusion. According to *Jebian*, *Firestone* affords deferential review only to discretionary decisions that conform to the limits placed upon the administrator's discretionary authority by the plan and ERISA regulations. 310 F.3d at 1177-78. Thus, "[d]ecisions made outside the boundaries of conferred discretion are not exercises of discretion" and are not entitled to deferential review. *Jebian,* 310 F.3d at 1178.

Another recently-decided, analogous case, this one in the Third Circuit, supports the principle that "deemed denied" decisions should be reviewed *de*

*novo*. In *Gritzer v. CBS, Inc.*, 275 F.3d 291 (3rd Cir. 2002), a plan administrator with discretionary authority failed to respond to a claim until after it was deemed denied. The Third Circuit reversed the district court's application of the arbitrary and capricious standard, holding that, under *Firestone's* application of trust law principles to ERISA cases, if "a trustee fails to act or to exercise his or her discretion, *de novo* review is appropriate because the trustee has forfeited the privilege to apply his or her discretion; it is the trustee's analysis, not his or her right to use discretion or a mere arbitrary denial, to which a court should defer." *Id.* at 296.[5]

Other circuits, however, have decided the issue differently. The Fifth Circuit has held that "the standard of review is no different whether the claim is actually denied or deemed denied." *Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 101 (5th Cir. 1993). The court, however, provided no explanation or authority for this statement. In *McGarrah v. Hartford Life*, the Eighth Circuit reviewed a plan administrator's denial of benefits for abuse of discretion, even though the administrator never responded to the claimant's appeal. 234 F.3d 1026, 1030-31 (8th Cir. 2000). The court acknowledged that the plan administrator's failure to respond was "a serious procedural irregularity,"

---

[5]We note that the district court did not have the benefit of the decisions in *Jebian* or *Gritzer*, as both were decided after the district court granted summary judgment in this case.

-15-

but nevertheless held that "the mere presence of a procedural irregularity is not enough to strip a plan administrator of the deferential standard of review." *Id*. at 1031. Because the plan administrator's initial decision thoroughly explained the basis for the adverse decision and the claimant's submissions on appeal contained "no new medical evidence" contradicting the initial decision, the court held that the claimant's appeal "required no response by [the administrator] to permit meaningful judicial review." *Id*.

*McGarrah*, then, holds that even "deemed denied" decisions can be afforded judicial deference if the reviewing court determines that the administrator's initial denial and statement of reasons can effectively be applied to the claimant's appeal. *Id*. That is, the court should interpret the administrator's silence on the claimant's appeal as implicitly affirming the original denial for the reasons set forth therein. LINA urges us to adopt a similar interpretation of its non-response to Mrs. Gilbertson's appeal and insists that the reasons it provided in the initial denial are clearly applicable to and dispositive of the appeal.

Even if the *McGarrah* approach is permissible under *Firestone*, it should be limited to situations where the claimant does not provide meaningful new evidence or raise significant new issues in the appeal. In *McGarrah*, the administrator's initial denial contained "overwhelming evidence that McGarrah

was no longer disabled," including videotaped surveillance of McGarrah moving furniture and carrying other heavy objects, and McGarrah submitted no meaningful new medical evidence on appeal. *Id*.

The facts here are quite different. LINA's initial denial explained that Mrs. Gilbertson had failed to produce sufficient evidence regarding how her condition affected her capacity to perform job-related functions. In response, she submitted information both from her physician and her chiropractor that addressed her inability to perform job functions, as well as affidavits from friends and colleagues attesting to the same. In this situation, it makes no sense to apply the reasoning of LINA's initial denial to Mrs. Gilbertson's submissions on appeal. The initial claim was denied for failure to submit certain kinds of evidence, and Mrs. Gilbertson then submitted evidence purporting to satisfy LINA's objections. The court therefore cannot infer from the initial denial what LINA thought of Mrs. Gilbertson's subsequent submissions. Because LINA never issued a reasoned evaluation of the new evidence, it is impossible for a court to discern, much less properly review, the basis for LINA's adverse decision. This precludes deferential review of LINA's decision on appeal.

LINA also argues that applying a *de novo* standard of review to deemed denied decisions is inconsistent with the plain meaning and broader purposes of the applicable ERISA regulations. According to LINA, the only purpose of the

mandated deadlines and the "deemed denied" provision is to make it clear that, upon expiration of the deadline, the claimant has fully exhausted her administrative remedies and may then file suit. LINA thus suggests that the "deemed denied" provision serves simply as an admission ticket to court, and not as a deadline that, if violated, should strip the administrator of his discretion. Accordingly, depriving the administrator of his discretion for a minor procedural irregularity that did not substantively harm the claimant would reflect a hyper-proceduralism that is inconsistent with the flexibility and discretion contemplated by the Plan and ERISA regulations.

This argument is not wholly without merit. The Supreme Court has held that the "deemed denied" provision allows the claimant to "bring a civil action to have the merits of his application determined, just as he may bring an action to challenge an outright denial of benefits," but that an administrator's delay is not necessarily a substantive violation giving rise to a private right of action. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985). *See also Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487, 492 (D.C. Cir. 1998), *cert. denied*, 525 U.S. 930 (1998). Courts have also been willing to overlook administrators' failure to meet certain procedural requirements when the administrator has substantially complied with the regulations and the process as a whole fulfills the broader purposes of ERISA and its accompanying regulations.

*See, e.g., Sage v. Automation, Inc. Pension Plan and Trust,* 845 F.2d 885, 895 (10th Cir. 1988) ("[n]ot every procedural defect will upset the decision of plan representatives"); *Halpin v. W.W. Granger, Inc.*, 962 F.2d 685, 690 (7th Cir. 1992) ("In determining whether a plan complies with the applicable regulations, substantial compliance is sufficient."); *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807-08 (6th Cir. 1996) (upholding denial that violated procedural requirements because, despite violations, claimant was notified of reasons and was given fair opportunity for review); *Donato v. Metro. Life Ins. Co.*, 19 F.3d 375, 382-83 (7th Cir. 1994) (substantial compliance with regulations is sufficient when claimant received enough information to allow effective review); *Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 127 (4th Cir. 1994) (plan's decision that violated applicable deadlines of 29 C.F.R. § 2560.503-1 substantially complied with regulation because the claimant was not prejudiced).

We agree that a "substantial compliance" approach is appropriate in this case. Accordingly, our holding does not require that every decision that comes on the 61st or 121st day following the claimant's notice of appeal must be subject to plenary review in federal court. Such a hair-trigger rule could inhibit collection of useful evidence and create perverse incentives for the parties. Even in cases where additional medical information is clearly necessary for a proper decision, administrators would have an incentive to issue a final denial on the inadequate

record in order to preserve their right to deferential review, rather than to wait for the information and risk losing deference. On the other side, claimants might be encouraged to delay a final decision by suggesting that they intend to produce additional information, only to pull the plug and demand *de novo* review in federal court on the 121st day. This result would be antithetical to the aims of ERISA. ERISA's procedural regulations are meant to promote accurate, cooperative, and reasonably speedy decision-making, not to generate an endless stream of business for employment lawyers. *See Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996) (congressional purpose in enacting ERISA was "not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans"). Thus, in the context of an ongoing, good faith exchange of information between the administrator and the claimant, inconsequential violations of the deadlines or other procedural irregularities would not entitle the claimant to *de novo* review.

In order to determine when an administrator who fails to render a timely decision might nevertheless be in "substantial compliance" with the regulatory requirements, we must consider the purpose of the mandated deadlines in the context of other ERISA procedural requirements. *Donato,* 19 F.3d at 382 ("In determining whether there has been substantial compliance, the purpose of 29 U.S.C. § 1133 and its implementing regulations, 29 C.F.R. 2560.503-1(f), serves

as our guide"). Fortunately, the broader purpose of the relevant ERISA regulation seems fairly clear. The regulation requires that plan administrators follow certain procedures within the specified deadlines when they deny claims. Among other things, the administrator must provide the claimant with a comprehensible statement of reasons for the denial, including "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary" and "[a]ppropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review." 29 C.F.R. § 2560.503-1(f)(3), (4) (1999). The regulation also requires that the decision on review "shall include specific reasons for the decision, written in a manner calculated to be understood by the claimant, as well as specific references to the pertinent plan provisions on which the decision is based . . . The decision on review shall be furnished to the claimant within the appropriate time . . .." 29 C.F.R. § 2560.503-1(h)(3), (4) (1999). In Judge Kozinski's felicitous formulation:

> In simple English, what this regulation calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries. If benefits are denied . . . the reason for the denial must be stated in reasonably clear language, . . . if the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it. There is nothing extraordinary about this: it's how civilized people communicate with each other regarding important matters.

*Booton v. Lockheed Medical Benefit Plan,* 110 F.3d 1461, 1463 (9th Cir. 1997).

-21-

The deadlines play a crucial role in this "meaningful dialogue." Although plan administrators may believe that they have articulated good reasons for their requests for more records or additional diagnostic tests, from the claimant's perspective these requests are often indistinguishable from pointless stalling. In addition, the costs of delay are generally much higher for claimants, who may need disability benefits to buy their daily bread, than for plans and administrators. *See, e.g., Booton*, 110 F.3d at 1463 n.6 (expressing concern that administrator had "little incentive to come to grips with [beneficiaries'] claims"). It would be manifestly unfair to claimants if plan administrators could extend the process indefinitely by continually requesting additional information. The deadlines therefore empower the claimant to call a halt to the evidence-gathering process and insist on an up or down decision on the record as it stands. It follows, then, that an administrator who fails to render a timely decision can only be in substantial compliance with ERISA's procedural requirements if there is an ongoing productive evidence-gathering process in which the claimant is kept reasonably well-informed as to the status of the claim and the kinds of information that will satisfy the administrator. *See Halpin,* 962 F.2d at 691 (plan administrator cannot deny claim based on claimant's failure to provide information if claimant lacked opportunity to provide information because administrator never informed claimant what information was missing).

No such meaningful dialogue took place in Mrs. Gilbertson's case. The review process actually began well. After receiving Mrs. Gilbertson's request for review on January 14, 1999, LINA promptly assured her that she would be notified of the final decision within 60 days. Mrs. Gilbertson then asked for an extension of time in order to submit additional medical information. LINA graciously granted the extension (to March 31) by a fax sent to Mrs. Gilbertson on February 16. The March 31 extension would toll the running of the deadline, and LINA was not required to render a final decision until 60 days thereafter. So far so good.

Unfortunately, Mrs. Gilbertson never heard from LINA again. A letter from her attorney and submissions of additional medical information (both before and after the March 31 deadline) went unanswered. On June 1, near or after the 60-day deadline (depending on whether the clock starts on March 31, the agreed upon deadline, or April 7, the date of Mrs. Gilbertson's final submission), Mrs. Gilbertson's attorney sent another letter asking LINA to advise whether it would accept or reject the claim. No response. In fact, LINA never issued any decision on Mrs. Gilbertson's appeal at all. Instead, it simply sat on the claim until well after it was automatically deemed denied by operation of ERISA regulations. Even the direct request by Mrs. Gilbertson's attorney for a decision, or at least some sort of a status update, failed to elicit a response.

Finally, after more than six months of radio silence from LINA, Mrs. Gilbertson received a notice of a scheduled appointment from LINA's outside doctors. There was no explanation of why LINA thought the additional tests were necessary, nor did LINA offer any reasoned evaluation of the additional submissions from Mrs. Gilbertson's physician, chiropractor, and co-workers. LINA had ceased participating in a meaningful dialogue with Mrs. Gilbertson more than six months previously, and it never got around to exercising its discretion or applying its administrative expertise to reach a final decision. This cannot be construed as substantial compliance with ERISA's procedural requirements.

We therefore REVERSE the district court and REMAND for reconsideration according to the appropriate standard of review. [6] We do not hold that Mrs. Gilbertson is entitled to damages or other substantive remedies because of LINA's violation of the deadline, nor do we decide that she is entitled to receive benefits under the Plan. Rather, we instruct the district court to conduct a *de novo* review of Mrs. Gilbertson's claim of eligibility for LTD benefits under the Plan based on the record before LINA at the time she filed suit.

---

[6] The district court need not allow the parties to submit additional evidence, unless it determines that supplementation of the record is necessary to conduct an adequate *de novo* review. *See Hall v. UNUM Life Ins. Co. of Am.,* 300 F.3d 1197, 1202 (10th Cir. 2002).

## II. Treating Physician Rule

As a second and independent ground for appeal from the district court's grant of summary judgment to LINA and AlliedSignal, Mrs. Gilbertson contends that, under the treating physician rule, the district court should have given controlling weight to the opinion of her treating physician that she was disabled. The treating physician rule, generally applied in social security cases, requires deference to the opinions of the claimant's treating physician. *See, e.g., Mondragon v. Apfel*, 3 Fed.Appx. 912, 915 (10th Cir. 2001) (unpublished). This circuit has not ruled on whether to apply the treating physician rule in the ERISA context.

The circuits are split on this. *See Regula v. Delta Family-Care Disability Survivorship Plan*, 266 F.3d 1130, 1139 (9th Cir. 2001) (holding that the treating physician rule applies to ERISA plan decisions); *Nord v. Black & Decker Disability Plan*, 296 F.3d 823 (9th Cir. 2002), *cert. granted* 123 S.Ct. 817 (2003) (applying treating physician rule in ERISA context); *Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516, 532 (6th Cir. 2003) (same); *Donaho v. FMC Corp*, 74 F.3d 894, 901 (8th Cir. 1996) (same). *But see Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 136 n.4 (2d Cir. 2001) (concluding that the treating physician rule serves no purpose in *de novo* review of ERISA cases); *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989) (holding treating

physician rule inapplicable to ERISA plan administrator's decision); *Salley v. E.I.Dupont de Nemours & Co.,* 966 F.2d 1011, 1016 (5th Cir. 1992) (doubting whether rule applies to ERISA cases). The Supreme Court has recently granted certiorari on the issue. *See Black & Decker Disability Plan v. Nord,* 123 S. Ct. 817 (2003) .

In light of our disposition of the first issue in this case, it is not necessary to decide this question. The district court declined to follow a treating physician rule, in the context of a case in which it granted deference to the plan administrator. We do not know how the district court will treat the treating physician's evidence on remand, under the *de novo* standard. By the time the district court is required to confront that question, it may have received further guidance from the Supreme Court.

## III.

For the foregoing reasons, we REVERSE the district court's grant of summary judgment to LINA and AlliedSignal and REMAND for a *de novo* review of Mrs. Gilbertson's eligibility for long-term disability benefits.