HOLLOWAY, Circuit Judge,
concurring in part and dissenting in part:
I respectfully dissent from the holding that the benefits determinations should be reviewed under the arbitrary and capricious standard. I therefore dissent from Parts II-A and II-B of the majority opinion, and I concur only in the result as to Part II-C. I concur in Part II-D, agreeing that the court should notice and reverse the error of entering judgment against defendant Everest.
I
First, I disagree with the majority’s framing of the issue as “whether a fiduciary’s decision to delegate part of its Firestone authority to an independent claims administrator triggers de novo review.” Maj. op. at 921-922. The question instead is simply whether any discretion was exercised to which the courts owe deference. I believe that on this record the answer to that question is clearly no. In this case, the fiduciary party with discretion (United) did not act, and the party which acted (claims administrator Everest) had no discretion. The majority’s holding, which is in effect that any act authorized by a party vested with discretion must be reviewed with deference, is contrary to — -rather than dictated by — the common law of trusts, is contrary to the manifest intent of Congress for ERISA plans to be administered by a fiduciary, and creates a circuit split by adopting its unprecedented holding.
The majority’s analysis is critically flawed because its underpinning is the unsupported assumption that “discretion was exercised by some combination of the fiduciary and its agent.” Maj. op. at 926. As I will demonstrate infra, any suggestion that the agent exercised discretion is not supported by the evidence concerning how the claims were handled and is directly contrary to the contractual provision governing the relationship between the fiduciary and the agent. Further, both the fiduciary and the agent specifically denied in their pleadings, under constraints of Fed.R.Civ.P. 11, that the agent exercised any discretion. And the record is clear that the fiduciary, United, did nothing at all. Consequently, the majority’s naked assertion that some combination of the fiduciary and its agent exercised discretion is simply that-a naked assertion completely lacking in support.
II
Before outlining the facts and circumstances that refute the majority’s key as *933 sumption, I think it useful to briefly state the relevant legal principles. We said in Gilbertson v. Allied Signal, Inc., 328 F.3d 625, 631 (10th Cir.2003), that to be entitled to deferential review, the administrator must actually exercise the discretion granted by the plan. The district court applied the plain meaning of that statement and others from Gilbertson, including this:
“[I]f a trustee fails to act or to exercise his or her discretion, de novo review is appropriate because the trustee has forfeited the privilege to apply his or her discretion; it is the trustee’s analysis, not his or her right to use discretion or a mere arbitrary denial, to which a court should defer. ”
Gilbertson, 328 F.3d at 633 (quoting Gritzer v. CBS, Inc., 275 F.3d 291, 296 (3d Cir.2002)) (emphasis added). I agree with the district court that this language should be applied to the circumstances here where the administrator only acted through the agent, which had neither discretion nor fiduciary duties.[1] No party exercised the discretion granted by the plan; therefore, the plan administrator is not entitled to deferential review. This seems in keeping with the common law of trusts: “Where discretion is conferred upon the trustee ... its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion.” Restatement (Second) of Trusts § 187 (1959) (emphasis added). Failure to use judgment is by definition an abuse of discretion. See id. at comment e.
The other circuits that have considered this issue have reached this same conclusion. See Rodriguez-Abreu v. Chase Manhattan Bank, 986 F.2d 580, 584 (1st Cir.1993) (“To be an effective delegation of discretionary authority so that the deferential standard of review will apply, therefore, the fiduciary must properly designate a delegate for the fiduciary’s discretionary authority.”); Madden v. ITT Long Term Disability Plan, 914 F.2d 1279, 1283-85 (9th Cir.1990) (“[W]e hold that where ... a named fiduciary properly designates another fiduciary, delegating its discretionary authority, the ‘arbitrary and capricious’ standard of review ... applies .... ”); and Baker v. Big Star Div. of the Grand Union Co., 893 F.2d 288, 291 (11th Cir.1990). See also Nichols v. Prudential Ins. Co., 406 F.3d 98, 109 (2d Cir.2005) (“[W]e conclude that we may give deferential review only to actual exercises of discretion.”).
The majority opinion relies heavily on its reading of the statutory provision authorizing delegation of duties. That provision states, in pertinent part:
The instrument under which a plan is maintained may expressly provide for procedures (A) for allocating fiduciary responsibilities (other than trustee responsibilities) among named fiduciaries, and (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan.
29 U.S.C. § 1105(c)(1).[2]
*934 In this case, there was no designation of any other person to carry out fiduciary responsibilities. I do not doubt that the named fiduciary may, as United did here, also designate another, Everest in this case, to carry out ministerial functions. See 29 C.F.R. § 2509.75-8, D-2. Or, as in Madden, the named fiduciary may designate another fiduciary to perform discretionary duties, and discretionary decisions by the designated fiduciary will be reviewed deferentially. But it is precisely because ministerial, and not discretionary or fiduciary, duties were delegated — combined with the key fact that United did not exercise its retained discretionary authority — that no deference is due the decisions made.[3]
I realize that United’s delegation of duties to Everest does not relieve it of liability because it is bound by the acts of its agent, as the majority opinion notes. But surely this statute’s purposes go beyond ensuring that someone can he held liable through court action.
Under the ERISA scheme, a plan administrator exercises the function of handling claims with fiduciary responsibilities to the plan’s beneficiaries. This seems to be close to the very heart of the legislative plan: “It is hereby declared to be the policy of this chapter to protect ... the interests of participants in employee benefit plans and their beneficiaries, by ... establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans.... ” 29 U.S.C. § 1001(b).
More importantly, the issue here is not whether United may be liable for Everest’s actions undertaken as United’s agent. Of course United may be so liable. The issue instead is whether, in deciding whether liability should be imposed in this case, the court should review the decisions deferentially. And there is simply no basis shown for such deference where the decisions were ministerial, rather than discretionary, in character. In this case the fiduciary clearly failed to exercise its discretion and instead simply defaulted to the *935 non-fiduciary agent, which expressly was not endowed with discretion, to carry out duties that ERISA assigns to a fiduciary. Because no discretion was exercised, no deference is due to the decisions made. In the alternative, however, I would hold that the decisions as to the Primary Children’s Hospital claims which were handled in this perfunctory fashion were arbitrary and capricious. The following discussion illustrates both that the acts were not discretionary and that the decisions were arbitrary and capricious.
Ill
I disagree that the majority’s result is supported by our decision in Gilbertson, but it is useful to note the factual differences in the cases. We noted in Gilbert-son that the plan administrator had delegated its discretion to the third-party claims administrator and that the plan documents expressly authorized such delegation. But this case is quite different. In this case the plan document provided:
The Company is the named fiduciary and is the plan administrator of the Plan. The Company will engage an independent claims administrator to administer the Plan, however, the Company makes all final decisions about benefits paid from the Plan.
Aple. Supp.App. 250 (italics in original). This is not language delegating discretionary authority or fiduciary responsibilities. See Nichols v. Prudential Ins. Co., 406 F.3d 98, 108-09 (2d Cir.2005) (discussing language that is effective to vest discretion in an administrator).
Moreover, the defendants in this case have resolutely and consistently taken the position that Everest exercised no discretion and was not a fiduciary. Both specifically denied in pleadings that Everest was vested with discretion. In the Complaint, plaintiffs had alleged on information and belief that both United and Everest had discretionary authority. Aple. Supp.App. 3, ¶ 12. Both defendants specifically denied the allegation. Id. at 12,19.
The contract under which Everest acted was quite clear on the point:
The Contract Administrator [Everest] shall not be deemed a Plan “fiduciary” as defined in ERISA. [Everest’s] services shall not include any power to make decisions regarding Plan policy, interpretations, practices or procedures, but shall be confined to ministerial functions such as those described by the U.S. Department of Labor in its Regulations Section 2509.75-8, D-2.[Everest] shall have no final discretionary control over Plan management, including disposition of Plan assets and Plan administration. [Everest’s] services hereunder shall be subject to review, modification, or reversal by the Plan Sponsor and/or Plan Administrator.
Id. at 271 (emphasis added).
As to the claims for Andrew’s treatment at Primary Children’s Hospital, the subject of Part II-B of the majority opinion, the deposition testimony of the witness designated to speak for Everest further reveals the ministerial or clerical nature of Everest’s services. The witness testified that the process of reviewing the claims for Andrew’s treatment at that hospital consisted almost entirely of reading the numerical code used by the hospital to categorize the service and comparing that with the plan’s coverage language:
Q. Now, when a claim would come in under this plan, give me an idea of how it was decided whether the claim would be paid, how much would be paid, or whether it would be denied.
A. The basis for doing that is, of course, the provisions of the master plan document and the way that the care is *936 coded or represented by the care provider.
There are universal codes, diagnosis codes, service codes that are used in the medical care field. And those codes are required to be on the bill. If they’re not, then we are not able to process the bill.And those codes are a way that the care provider themselves represents what the care provided was, what classification, what category of care it was. And from those codes we can determine which category on the schedule of benefits is the one that applies.
Again, it’s a matter of correctly inputting the care codes in the claims administrator system. And that gives the claims administrator the information they need to categorize the care.
Once the care is categorized, then the schedule of benefits dictates how the benefit payment is made.
But I think it’s a pretty good summary of what happens to say that it’s a matter of taking the codes that the care provider has assigned to the care they provided. That helps us categorize the care. And then from then — from that point on, the master plan document dictates what benefit is payable by the plan.
* * * *
Q. So then who makes the determination after that of the category that that particular type of service falls into?
A. Almost without exception, the provider of care has categorized the service that they have provided by coding it in a certain way. So — when you use the term judgment, to me, that means that there’s some sort of judgment decision to make. And for the most part, that’s not the case. It’s a matter of simply — of correctly reading what the care provider codes are and putting it in the correct— putting it in the category that the care provider has assigned it to.
Id. at 401-04 (testimony of Ronald C. Hulse).
This is, so far as I can determine, the best description available of how the claims for care at Primary Children’s Hospital were handled. The hospital chose to use the numerical code for rehabilitative sendees rather than the code for services connected with hospitalization for most of the services provided. Rehabilitative services were limited under the plan to $2,500.00. Everest read the codes used by the hospital and mechanically applied the limitation stated in the plan. This is the “exercise of discretion” to which, the majority holds, deference is required.
Because I disagree with the fundamental premise that discretion was exercised by Everest as agent for United, I see no basis for employment of the deferential standard of review. I therefore respectfully dissent from the holdings in Parts IIA and II-B of the majority opinion and would affirm the district court’s judgment on the claims involving care provided at Primary Children’s Hospital.[4] I concur in the result of Part II-C, which affirms the district court’s judgment on the claims involving care provided at St. Mary’s Hospital, but for the reasons set out herein I would reach that result by affirming the district court’s analysis under de novo re *937 view rather than by re-examining the claims under the arbitrary and capricious standard.
IV
For the reasons stated in Part II-D of the majority opinion, I agree that the monetary judgment against Everest should be reversed.

. The critical legal premise of the majority opinion, it appears, is the conclusion that 29 U.S.C. § 1105(c)(1) permits the delegation of non-fiduciaries to carry out fiduciary responsibilities. Maj. op. at 924-925. As shown infra, no factual basis exists for application of this conclusion of law in this case where only ministerial duties were delegated. Moreover, the conclusion is wrong as a matter of law. Under ERISA, if a party exercises discretion, it is a fiduciary. 29 U.S.C. § 1002(21)(A). See also Baker v. Big Star Div. of the Grand Union Co., 893 F.2d 288, 291 (11th Cir.1990) ("[I]t is clear that an administrator with discretionary authority is a fiduciary.”) (emphasis in original).

. It appears to me that a line was inadvertently dropped in the district court's quotation from this statute and that the district judge meant to quote the relevant parts of the provision just as the majority opinion does. This seems likely to me for two reasons. First, the district court opinion introduces its abbreviated quote from the statute by saying that ERISA provides that a named fiduciary may delegate its fiduciary responsibilities. But the provision as quoted in the district court opinion does not say that at all. In fact, the edited version that appears in that opinion merely states what is, under ERISA, a truism: that the plan may provide for named fiduciaries to carry out fiduciary responsibilities. Second, the district judge goes on to discuss with apparent approval the holding of Madden that where "a named fiduciary properly designates another fiduciary, delegating its discretionary authority, the 'arbitrary and capricious standard' ... applies to the designated ERISA-fiduciary as well as to the named fiduciary.” This discussion also is inconsistent with the truncated version of the statutory provision as quoted in the district court’s opinion.

. The majority opinion says that the fact that Everest handled every claim “led the district court to conclude that United Staffing effectively did nothing, totally failing for purposes of the ERISA statute and Gilbertson to exercise its discretion and thereby forfeiting its claim to deferential review.” Maj. op. at 925. But the district court did not merely draw an inference that United did nothing. The evidence was clear and undisputed, and based entirely on the deposition testimony of United's representative, that United did nothing. The question is whether a fiduciary which has reserved to itself all fiduciary obligations and all discretion and then does nothing should be afforded the same deferential review that we would give to the decisions of a fiduciary which actually exercised its reserved discretion to make the final determinations on contested claims.

. After holding that the de novo standard of review applied because the delegation of responsibilities was to a non-fiduciary and no fiduciary ever reviewed the Geddes' claims, the district judge noted that his holding made it unnecessary to determine whether the de novo standard should be applied for another reason — the Geddes’ allegation that the administrator failed to follow its claims and appeals procedures. I feel it appropriate to note that the district court is free to address that issue on remand.