# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1376

_____

Everett E. McGarrah,　　　　　　　　　*
　　　　　　　　　　　　　　　　　　　*
　　Plaintiff - Appellant,　　　　　　*
　　　　　　　　　　　　　　　　　　　*　Appeal from the United States
v.　　　　　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　　　*　Western District of Arkansas.
Hartford Life Insurance Company,　　　*
　　　　　　　　　　　　　　　　　　　*
　　Defendant - Appellee.　　　　　　*

_____

Submitted:　September 15, 2000

Filed:　December 11, 2000

_____

Before WOLLMAN, Chief Judge, LOKEN and MURPHY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Hartford Life and Accident Insurance Company issued a group disability policy (the "Policy") to fund an ERISA plan for the benefit of the employees of Wal-Mart Stores, Inc. The Policy granted Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret [its] terms and provisions." Everett E. McGarrah, a Wal-Mart truck driver, slipped on ice at a truck stop in 1994, sustained a herniated cervical disc, and applied for long-term disability benefits under the Policy. Hartford agreed and began paying monthly total disability benefits in January 1995. In late 1997, after gathering evidence that McGarrah's physical condition had

significantly improved, Hartford terminated those benefits. McGarrah exhausted his remedies under the Policy and filed this ERISA action for wrongful denial of benefits. See 29 U.S.C. § 1132(a)(1)(B). The district court[1] granted summary judgment in favor of Hartford. McGarrah appeals, arguing that the court erred in applying the deferential abuse-of-discretion standard of review and that the record does not support Hartford's termination of benefits under any standard. We affirm.

## I.

As the Policy defines total disability, McGarrah was entitled to benefits for the first twelve months if he was prevented by accidental bodily injury "from performing the essential duties of [his] occupation." To continue receiving benefits after twelve months, he must be "prevented from performing the essential duties of any occupation for which he is qualified by education, training or experience." McGarrah's initial disability application included an Attending Physician's Statement of Disability (a form document prepared by Hartford) in which Dr. Randall Hendricks stated that McGarrah was totally disabled by the herniated disc for an undetermined period. Dr. Hendricks classified McGarrah's condition as a "Class 5-Severe limitation of functional capacity; incapable of minimal (sedentary) activity."

In February 1995, McGarrah underwent an anterior cervical diskectomy and fusion of his C5-C6 and C6-C7 vertebrae. In a March 14 Attending Physician's Statement, Dr. Hendricks stated that McGarrah was totally disabled but predicted "a fundamental or marked change" in McGarrah's prognosis within three to six months. Dr. Karl Detwiler, the neurosurgeon who performed the diskectomy, also completed an Attending Physician's Statement, agreeing that McGarrah was totally disabled but predicting a marked change at some unknown time in the future.

---

[1]The HONORABLE JIMM LARRY HENDREN, Chief Judge of the United States District Court for the Western District of Arkansas.

In January 1996, after McGarrah had received benefits for twelve months, Hartford requested and he submitted another Attending Physician's Statement in which Dr. Hendricks stated that McGarrah remained totally disabled from any job for an undetermined period. A short time later, McGarrah underwent additional neck surgery -- a cervical laminectomy and spinal fusion at C5-C6 and C6-C7. Dr. Hendricks saw McGarrah again in January 1997. His office notes recite that McGarrah was "doing pretty well . . . the fusion is solid and he has come along nicely."

In October 1996, after a hearing, an administrative law judge granted McGarrah's application for Social Security disability benefits retroactive to February 1994. The ALJ found that McGarrah's physical impairments prevented him from doing his past relevant work and limited him to sedentary jobs, making him presumptively disabled based upon his advanced age, his minimal education and marginal literacy, and his lack of transferable job skills. Because benefits under the Policy were reduced by the retroactive Social Security disability benefits, Hartford recalculated McGarrah's past Policy benefits, demanded that he refund $18,200, and began withholding monthly benefits to offset the prior overpayments. Hartford also asked McGarrah to submit a current Attending Physician's Statement. In September 1997, McGarrah's attorney replied that withheld benefits had more than offset any overpayments. He also submitted an Attending Physician's Statement from Dr. Hendricks dated July 10, 1997, which opined that McGarrah was totally disabled from any job, his second surgical fusion was "rock-solid," and "his symptoms will get better given time."

Meanwhile, in May 1997, Wal-Mart informed Hartford of a tip that McGarrah was working part-time. Surveillance by Wal-Mart investigators, which was shared with Hartford, suggested that McGarrah was capable of lifting, bending, and engaging in other physical activities. Hartford then initiated its own investigation, including videotaped surveillance of McGarrah's activities on September 4 and 5, 1997. The videotape, made part of the district court record, revealed McGarrah:

-- climbing in and out of a pick-up truck;

-- driving the truck without restriction;

-- moving his head and neck without restriction;

-- reaching and lifting a reclining chair over the truck's tailgate;

-- carrying a large dog;

-- lifting a large bag from the truck bed;

-- unloading furniture from a trailer and carrying it; and

-- stepping from the trailer to the ground.

On September 25, after reviewing the videotape, a Hartford investigator and an investigator from the Insurance Fraud Unit of the Arkansas Department of Insurance went to the office of McGarrah's attorney for a prearranged meeting. McGarrah failed to attend. In response to the investigators' questions, his attorney stated that McGarrah could not drive any vehicle, move his neck, or look down at the ground.

The two investigators finally met with McGarrah and his attorney on October 23. McGarrah initially stated that he was still totally disabled, barely able to lift ten pounds on a good day. When shown the videotape, McGarrah first denied he was the man in the tape, then admitted it was he but claimed it had hurt him to move the furniture. When the Hartford investigator asked for a further explanation, McGarrah's attorney ended the meeting. The Arkansas Department of Insurance investigator gave McGarrah his card, stating that this appeared to be a criminal matter the Department would investigate. Six days later, McGarrah was examined again by Dr. Hendricks.

On December 30, 1997, Hartford notified McGarrah it was terminating his disability benefits as of September 5, 1997, because he no longer met the definition of totally disabled based upon "all of the file documentation currently available to us including but not limited to the surveillance video of September 4, 1997 and September 5, 1997 of Mr. McGarra[h]'s daily activities." The notice explained that McGarrah's daily activities as revealed by the videotape were "not consistent with a Class 5-Severe

-4-

limitiation of functional capacity; incapable of minimal (sedentary) activity." It also cited Dr. Hendricks's July 10, 1997, statement that McGarrah's cervical fusion was rock-solid. Consistent with the Policy's claims provisions, the notice advised McGarrah that he could submit additional information for Hartford's review, and he could appeal the adverse decision in writing within sixty days if he did not agree with the reasons given. The notice further advised, "you will receive written notification of the results of that review." Finally, the notice recalculated the outstanding benefits overpayment and demanded that McGarrah refund $5,393.14 to Hartford.

McGarrah timely requested review of the adverse decision. In support, he submitted a February 9, 1998, Attending Physician Statement by Dr. Hendricks stating that McGarrah was totally and permanently disabled from any job and would "never" recover. He also submitted an Attending Physician Statement by Dr. David Wong, who was treating McGarrah for carpel tunnel syndrome in both wrists. However, McGarrah did not submit -- either to Hartford or later to the district court -- any notes or report from Dr. Hendricks's October 29, 1997, examination.

When Hartford did not respond to his appeal, McGarrah commenced this action. Hartford counterclaimed for the unpaid $5,393.14. After determining that McGarrah had exhausted his contractual remedies, the court ordered the parties to file a stipulated record (each side filed its own record) and then to brief its position. Based upon those records and briefs, the court ruled:

> [T]he Court . . . having applied the deferential abuse of discretion standard of review, finds that [Hartford] did not abuse its discretion in denying [McGarrah's] long term disability benefits and accordingly, the Court will not disturb the decision to deny benefits. Further, the Court finds that [McGarrah] remains indebted to [Hartford] for the amount of any overpayment which has not been refunded to [Hartford].

IT IS THEREFORE ORDERED AND ADJUDGED that this action be, and it hereby is, dismissed.

McGarrah timely appealed that order. Hartford did not ask the district court to reconsider its failure to make a specific award on the counterclaim. Nor did Hartford either cross appeal that failure or move this court to dismiss the appeal for lack of jurisdiction because the counterclaim had not been finally adjudicated. Therefore, we conclude the order being appealed was a final dismissal of both McGarrah's claim and Hartford's counterclaim.

## II.

McGarrah argues the district court erred in applying the deferential abuse-of-discretion standard, a question we review de novo. See Barnhart v. UNUM Life Ins. Co. of Am., 179 F.3d 583, 587 (8th Cir. 1999). In general, the abuse-of-discretion standard applies if, as in this case, the plan expressly gives the administrator discretion to determine eligibility for benefits and to construe the terms of the plan. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Layes v. Mead Corp., 132 F.3d 1246, 1250 (8th Cir. 1998). However, the degree of deference to be given the plan administrator's decision under the abuse-of-discretion standard may vary. The law of trusts, our guide in reviewing the actions of ERISA plan decisionmakers, affords less deference when the decisionmaker has labored under a conflict of interest, acted dishonestly or from an improper motive, or failed to use judgment in reaching a decision. See Buttram v. Central States, S.E. & S.W. Areas Health & Welfare Fund, 76 F.3d 896, 900 (8th Cir. 1996).

McGarrah first argues that Hartford operated under a financial conflict of interest created by its dual role as insurer and plan administrator. This contention is without merit. In the first place, McGarrah presented no evidence of the financial relationship between Wal-Mart and Hartford. Thus, we do not know the extent to which continuing

-6-

disability payments to McGarrah would have been incurred by Wal-Mart as a partial self-insurer or by Hartford as the plan-funding insurer. As we emphasized in Davolt v. O'Reilly Automotive, 206 F.3d 806, 809 (8th Cir. 2000), it is wrong to assume a financial conflict of interest from the fact that a plan administrator is also the insurer. Second, and equally important, McGarrah presented no evidence that the alleged financial conflict had "a connection to the substantive decision reached." Sahulka v. Lucent Tech., Inc., 206 F.3d 763, 768 (8th Cir. 2000). There is simply no hint in this record that Hartford's initial grant and later termination of McGarrah's disability benefits were tainted by any financial impact those decisions may have had on Hartford as the plan-funding insurer.

McGarrah next argues that Hartford is not entitled to the deferential standard of review because "a serious procedural irregularity existed, which . . . caused a serious breach of the plan administrator's fiduciary duty." Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998). McGarrah alleges two procedural irregularities -- that Hartford's December 1997 notice did not adequately explain why disability benefits were being terminated, and that Hartford totally failed to respond to McGarrah's appeal from that adverse decision and submission of additional medical evidence of disability.

A plan administrator must "set forth the rationale underlying [its] decision so that the claimant may adequately prepare an appeal to the federal courts, and so that a federal court may properly review . . . the decision." Collins v. Central States, S.E. & S.W. Areas Health & Welfare Fund, 18 F.3d 556, 561 (8th Cir. 1994). Hartford's December 1997 notice of decision explained that McGarrah's disability benefits were being terminated because Dr. Hendricks had recently described the cervical fusion as successful ("rock-solid"), and because the September 1997 videotape showed McGarrah performing many activities inconsistent with his claim of continued total disability. This initial notice easily satisfied the Collins standard.

Hartford's failure to respond to McGarrah's February 1998 appeal is more troubling. This was a serious procedural irregularity. Hartford's December 1997 notice promised a written response if McGarrah appealed, as the Policy's claims procedures require. Moreover, the Department of Labor's regulations require that a plan administrator provide an appeal procedure that culminates in a written decision. See 29 C.F.R. § 2560.503-1(h)(3). Hartford offers no explanation for its failure to respond to McGarrah's timely appeal. Indeed, its brief on appeal simply ignores the problem. But the mere presence of a procedural irregularity is not enough to strip a plan administrator of the deferential standard of review. As we said in Buttram, 76 F.3d at 900, a claimant must also present evidence that the irregularity raises –

> serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim; *see* Restatement (Second) of Trusts § 187 cmt. h. For example, where the plan trustee does not inquire into the relevant circumstances at issue; where the trustee never offers a written decision, so that the applicant and the court cannot properly review the basis for the decision; or where procedural irregularities are so egregious that the court has a total lack of faith in the integrity of the decision making process, a court may infer that the trustee did not exercise judgment when rendering the decision.

We conclude that McGarrah has failed to meet this rigorous standard. As we have noted, Hartford made a thorough investigation before terminating McGarrah's benefits, and its December 1997 notice adequately explained both the basis for the adverse decision and McGarrah's right to appeal. From a substantive standpoint, McGarrah's appeal required no response by Hartford to permit meaningful judicial review. McGarrah submitted Dr. Hendricks's conclusory February 1998 statement that McGarrah was now permanently and totally disabled. But that statement was facially inconsistent with Hendricks's earlier predictions that McGarrah's neck condition would improve, and the failure to submit any notes from Dr. Hendricks's October 29, 1997, examination left the appeal with no new medical evidence contradicting the

overwhelming evidence that McGarrah was no longer disabled provided by the September 1997 videotape and McGarrah's evasive October 23 interview. In these circumstances, Hartford's failure to respond to McGarrah's appeal, while wrong, does not undermine our confidence in the integrity of its decision-making process.

## III.

Finally, McGarrah argues that Hartford's termination of benefits must be reversed under any standard of review. Having determined that the district court correctly applied the abuse-of-discretion standard, this contention requires little further discussion. Under this deferential standard, the plan administrator's decision will be upheld if it was reasonable, that is, if it was supported by substantial evidence. If the decision satisfies this standard, it "should not be disturbed even if another reasonable, but different, interpretation may be made." Donaho v. FMC Corp., 74 F.3d 894, 899 (8th Cir. 1996).

Here, the primary evidence supporting the decision to terminate benefits were the September 1997 videotape showing McGarrah performing activities inconsistent with a claim of continuing total disability; McGarrah's failure to refute the clear implications of the videotape at the October 23 interview; and his failure to submit contrary contemporaneous medical evidence. McGarrah argues that Hartford had no medical evidence supporting its decision. We disagree. Dr. Hendricks's earlier Attending Physician Statements consistently stated that McGarrah was then disabled, but Dr. Hendricks predicted a "marked change" in March 1995, stated McGarrah "has come along nicely" in January 1997, and described the second fusion as "rock solid" in July 1997. These statements are consistent with the improved physical condition recorded in the September 1997 videotape. McGarrah further argues that Hartford ignored the findings of the administrative law judge who granted Social Security disability benefits. But that decision was based upon a presumption of disability that does not apply under the Policy. In these circumstances, Hartford's decision to

terminate McGarrah's disability benefits effective on the date of the videotape is supported by substantial evidence and was not an abuse of discretion.

The judgment of the district court dismissing all claims and counterclaims with prejudice and on the merits is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-