**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 16 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARTHA A. FINLEY,

       Plaintiff - Appellant/
       Cross - Appellee,

    v.

HEWLETT-PACKARD COMPANY
EMPLOYEE BENEFITS
ORGANIZATION INCOME
PROTECTION PLAN,

       Defendant - Appellee/
       Cross - Appellant.

Nos. 03-1178, 03-1213

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D. Ct. No. 01-D-1976 (OES))**

---

Robert Lawrence Liebross, Denver, Colorado, appearing for the Appellant/Cross-Appellee.

Gregory J. Kerwin, Gibson, Dunn & Crutcher, LLP, Denver, Colorado (Joseph P. Busch, III, Gibson, Dunn & Crutcher, LLP, Irvine, California, with him on the briefs), appearing for the Appellee/Cross-Appellant.

---

Before **TACHA**, Chief Circuit Judge, **McWILLIAMS**, and **LUCERO**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

Plaintiff-Appellant Martha A. Finley was denied long-term disability benefits by her employee benefit plan. She brought suit against Defendant-Appellee Hewlett-Packard Company Employee Benefits Organization Income Protection Plan ("the Plan") under 29 U.S.C. §§ 1132(a)(1)(B), 1133. The Plan moved for summary judgment. The District Court granted this motion, holding that no genuine issue of fact supported the view that Ms. Finley's benefits were denied arbitrarily and capriciously. On appeal, Ms. Finley argues that (1) the District Court erroneously applied arbitrary and capricious review, and (2) even under that standard of review, summary judgment on the § 1132(a)(1)(B) claim is inappropriate. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

Ms. Finley worked for Hewlett-Packard Corporation ("Hewlett-Packard") from 1969 to November 29, 1996. By November 1996, she suffered from moderately severe right thoracolumbar scoliosis. Hewlett-Packard sponsors the Plan, which provides short-term and long-term disability benefits to Hewlett-Packard employees who work more than thirty hours per week. Voluntary Plan Administrators, Inc. ("VPA") acts as the Plan's administrator. VPA is an independent third-party administrator that is compensated solely by a flat quarterly fee. All benefits are paid out of the Plan's trust funds, not by VPA.

Shortly after leaving her job, Ms. Finley applied to VPA for short-term

disability benefits, which were initially denied. After Ms. Finley administratively appealed with the help of an attorney, she obtained short-term benefits on May 14, 1997. These funds, which were paid retroactively, provided thirty-nine weeks of benefits.

Ms. Finley, again through counsel, applied to VPA for long-term benefits in July 1997. Pursuant to section 2(q)(ii) of the Plan's benefits distribution document ("the benefits document"), a plan member, after the expiration of short-term benefits, is eligible for long-term benefits only if "the Member is continuously unable to perform *any occupation* for which he or she is or may become qualified." (emphasis added). Thus, Ms. Finley could not obtain long-term benefits merely by showing her inability to perform her current position. Instead, she had to demonstrate through "objective medical evidence" that she could not perform any job for which she was, or could reasonably become, qualified.

VPA set the date for determining whether Ms. Finley met this disability criterion at August 30, 1997, a date that Ms. Finley does not contest. Thereafter, Ms. Finley underwent a battery of medical examinations by her own medical professionals and those hired by VPA. By the end of September 1997, Ms. Finley sent her final medical records to VPA for its consideration. Included among these records were the reports of Drs. Thomas Higgenbottom and John Mahan, Ms.

-3-

Finley's attending physicians.

On March 11, 1998, VPA sent a letter to Ms. Finley's attorney denying long-term benefits. VPA based this decision on several medical reports, including Drs. Higgenbottom's and Mahan's, that found Ms. Finley capable of performing sedentary work for which she may become qualified, such as that of a cashier or telephone operator, so long as she could change positions frequently.

On May 12, 1998, Ms. Finley administratively appealed this decision. Included with this appeal was a new medical report, dated May 11, 1998, from Dr. Mahan. This report states that Ms. Finley's condition had worsened since Dr. Mahan's September 1997 examination and that Ms. Finley's "severe pain prohibit[ed] any work." VPA responded on June 8 stating that the appeal submitted no new evidence and requesting that Ms. Finley supply additional medical evidence. Ms. Finley's counsel called VPA, informed them no more evidence was forthcoming and requested that the appeal proceed. In a July 14 letter, VPA confirmed this phone call and agreed to render a decision within sixty days. VPA sent a letter denying the appeal of the long-term benefits decision on October 9, 1998.

Pursuant to the Plan's benefits document and the Department of Labor

ERISA[1] regulations then in effect, an appeal from a denial of benefits must be resolved within sixty days. *See* 29 C.F.R. § 2560.503-1(h)(1)(i) (1999).[2] An administrator may obtain an additional sixty days to respond if a special need exists and the claimant receives notice. *Id.* Section 8(c) of the benefits document mimics this regulation, stating: "In no event shall the decision of the Claims Administrator be rendered more than one hundred twenty (120) days after it receives the request for review." The District Court, reasoning that VPA's response was due sixty days after its July 14 letter, determined that the due date for VPA's response was September 12, 1998. [3] Because VPA mailed its response to Ms. Finley's appeal on October 9, 1998, VPA's denial of her administrative appeal was twenty-seven days late. Therefore, pursuant to both section 8(c) of the benefits document and the applicable ERISA regulation, Ms. Finley's appeal was "deemed denied" on September 12, 1998. 29 C.F.R. § 2560.503-1(h)(1)(i)

---

[1] The Employee Retirement Income Security Act of 1974, 88 Stat. 891, 29 U.S.C. § 1001 et seq.

[2] Later amendments to this provision did not take effect until January 1, 2002, *see* 65 Fed. Reg. 70265, at 70271 (Nov. 21, 2000); hence, we apply the older regulation.

[3] Ms. Finley argues that VPA's response was due on September 10, 1998, 120 days after the submission of her May 12 appeal. Because this two-day discrepancy is irrelevant to our decision, we rely on the District Court's determination as a matter of convenience. In so doing, we specifically reserve the question of which metric is appropriate for calculating response timelines for a future case.

(1999).

Ms. Finley brought suit in federal court under 29 U.S.C. § 1132(a)(1)(B), seeking recovery of her long-term benefits, and under 29 U.S.C. § 1133, seeking damages for VPA's alleged failure to provide full and fair review of her claims.[4] The District Court, in granting summary judgment for the Plan, applied an arbitrary and capricious review to VPA's decision to deny long-term benefits and found no genuine issue of material fact as to whether VPA's decision met this standard. Ms. Finley timely appealed. The Plan cross-appealed, arguing that the District Court erred by not finding Ms. Finley's claims barred by the benefits document's contractual statute of limitations. We need not address the statute of limitations issue because we affirm the grant of summary judgment on the merits.

## II. STANDARD OF REVIEW

> We review a summary judgment under the same standard a district court applies pursuant to Rule 56 of the Federal Rules of Civil Procedure. In determining whether a genuine issue of material fact remains, we view all facts and inferences in the light most favorable to the nonmoving party. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The substantive law regarding a claim identifies which facts are material in a motion for summary

---

[4] Ms. Finley does not raise her § 1133 claim on appeal. Thus, we deem it waived. *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (White, ret. Justice) (holding that failure to brief an issue on appeal constitutes waiver).

judgment. *Carland v. Metropolitan Life Ins. Co.*, 935 F.2d 1114, 1118 (10th Cir. 1991) (internal citations and quotations omitted).

## III. DISCUSSION

A.    The Appropriate Standard for Review of the Plan's Denial of Benefits

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court ruled that a court should review a denial-of-benefits suit brought under § 1132(a)(1)(B) under a de novo standard unless the contract gives the administrator discretionary authority to determine eligibility for such benefits. *See Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999). When, as here, the plan administrator has full discretion to determine eligibility for benefits, courts ordinarily review a decision to deny benefits under the arbitrary and capricious standard. *Id*.

Ms. Finley contends, however, that we owe no deference to VPA's decision to deny her long-term benefits because her administrative appeal was merely "deemed denied" due to VPA's tardy issuance of its decision. The District Court, citing *McGarrah v. Hartford Life Ins*., 234 F.3d 1026, 1030-31 (8th Cir. 2000), rejected this argument, finding that VPA's denial, while late, did not "raise[] serious doubts as to whether the result reached [by VPA] was the product of an arbitrary decision." *Id.* at 1031.

After the District Court issued its summary judgment ruling, we published our opinion in *Gilbertson v. Allied Signal, Inc*., 328 F.3d 625 (10th Cir. 2003),

-7-

which we apply here.  *See Davidson v. America Online, Inc.*, 337 F.3d 1179, 1184 (10th Cir. 2003) ("Where a change in law occurs while a case is on appeal, we apply the law in effect at the time of our decision.").  In *Gilbertson*, the plaintiff appealed to the administrator after denial of her long-term-benefits application. Two weeks later, the administrator informed her that it had extended the time allowed for both the submission of additional medical information and the determination of her appeal.  Despite the plaintiff's numerous letters containing medical evidence and requests for updates, the administrator never issued a decision denying her appeal or communicated with the plaintiff again, resulting in "more than six months of radio silence." *Gilbertson*, 328 F.3d at 629-30, 636. Because of this failure, the plaintiff's appeal was "deemed denied" 120 days after she filed it.  *Id.* at 636.

After the plaintiff in *Gilbertson* filed suit, the district court granted the defendant summary judgment, applying an arbitrary and capricious review to the denial of benefits.  We reversed, reasoning that the plan administrator is not entitled to the deference of arbitrary and capricious review when certain appeals are "deemed denied" because the administrator made no decision to which a court may defer.  *Id.* at 631-32.  As such, we applied de novo review.  *Id.* ("When the administrator fails to exercise his discretion within the required timeframe, the

reviewing court must apply *Firestone*'s default *de novo* standard.").[5]

Nevertheless, we did not apply "a hair-trigger rule" in *Gilbertson*, such that a denial of an administrative appeal rendered the day after the deadline entitles the administrator's decision to no deference. *Id.* at 634-35. Noting that ERISA is designed to "promote accurate, cooperative, and reasonably speedy decision-making" based upon a "good faith exchange of information between the administrator and the claimant," we adopted a "substantial compliance rule." *Id.* at 635. Pursuant to this rule, a plan administrator is in substantial compliance with this deadline if the delay is: (1) "inconsequential"; and (2) in the context of an on-going, good-faith exchange of information between the administrator and the claimant. *Id.*

In rendering its ruling in the case before us, the District Court relied substantially on the Eighth Circuit's decision in *McGarrah*, which we

---

[5] The circuits are split on this issue. *Compare Jebian v. Hewlett-Packard Emp. Ben. Org. Income Protection Plan*, 349 F.3d 1098, 1107-08 (9th Cir. 2003) (holding that the administrator's failure to communicate with plaintiff until 119 days into the 120-day review period triggers de novo review); *Gritzer v. CBS, Inc.*, 275 F.3d 291, 295-96 (3d Cir. 2002) (extending no deference to a plan administrator's post hoc justification, issued only after commencement of litigation, for a deemed denial of benefits); *with McGarrah*, 234 F.3d at 1030-31 (holding that an ERISA plan fiduciary's failure to respond to beneficiary's request for administrative review does not trigger heightened scrutiny absent showing of extreme procedural irregularities); *Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 101 (5th Cir. 1993) ("In our view, the standard of review is no different whether the claim is actually denied or is deemed denied."); *Daniel v. Eaton Corp*., 839 F.2d 263, 267 (6th Cir. 1988) (same).

distinguished in *Gilbertson*.  The *McGarrah* court applied an abuse-of-discretion review even though the administrator failed to respond in a timely manner to the administrative appeal.  234 F.3d at 1031.  According to the Eighth Circuit, the delay was a mere procedural irregularity that did "not undermine [its] confidence in the integrity of the [administrator's] decision-making process."  *Id.* Specifically, the *McGarrah* court reached this conclusion because the plaintiff presented "no new medical evidence [on administrative appeal] contradicting the overwhelming evidence that [plaintiff] was no longer disabled."  *Id.*

In *Gilbertson*, we interpreted *McGarrah* as follows:

[E]ven 'deemed denied' decisions can be afforded judicial deference if the reviewing court determines that the administrator's initial denial and statement of reasons can effectively be applied to the claimant's appeal.  That is, the court should interpret the administrator's silence on the claimant's appeal as implicitly affirming the original denial for the reasons set forth therein. . . . [Thus,] if the *McGarrah* approach is permissible under *Firestone*, it should be limited to situations where the claimant does not provide meaningful new evidence or raise significant new issues in the appeal.  *Gilbertson*, 328 F.3d at 633.

Thus, in *Gilbertson*, we applied *McGarrah* as a limited exception to our general use of de novo review for "deemed denials."  *Id.*  Specifically, we found that, if a claimant fails to "provide meaningful new evidence or raise significant new issues [on administrative appeal]," *id.*, and the delay does "not undermine [the court's] confidence in the integrity of [the administrator's] decision-making process," *McGarrah*, 234 F.3d at 1031, then we apply arbitrary and capricious

-10-

review.  We hold that Ms. Finley's administrative appeal falls into this "*McGarrah*  exception."

August 30, 1997, is the uncontroverted date for determining Ms. Finley's eligibility for long-term benefits.  When VPA made its initial decision denying long-term benefits, it relied on a substantial amount of medical evidence – including the statements of Ms. Finley's personal physicians, Drs. Mahan and Higgenbottom – that were made near this date.  Both doctors found Ms. Finley capable of performing sedentary work so long as she could change positions frequently.  When Ms. Finley administratively appealed, she submitted only one new piece of potential evidence—an "Attending Physician's Statement of Disability" report, dated  May 11, 1998, wherein Dr. Mahan found that Ms. Finley's condition had "retrogressed" since his previous examination.  He further found that, as of May 11, 1998, her "severe pain prohibit[ed] any work."  On June 8, 1998, VPA responded to this report by stating that Ms. Finley had "not submitted any medical evidence" with her appeal because "[a]ny change in her condition after [her eligibility] date cannot be considered."

We agree with VPA.  The only relevant medical evidence is that pertaining to Ms. Finley's condition on her eligibility date: August 30, 1997.  Because the only evidence offered with Ms. Finley's administrative appeal – Dr. Mahan's May 11 report – pertains exclusively to her condition some eight months after the

eligibility date, it is irrelevant. We hold, therefore, that Ms. Finley failed to

"provide meaningful new evidence or raise significant new issues" on

administrative appeal. *Gilbertson*, 328 F.3d at 633. As such, VPA's "initial

denial and statement of reasons can effectively be applied to [Ms. Finley's

administrative] appeal." *Id.* Thus, the District Court properly applied arbitrary

and capricious review in its summary judgment ruling. [6] *See McGarrah*, 234 F.3d

at 1031 (applying arbitrary and capricious review because a similar delay did "not

undermine [the court's] confidence in the integrity of [the administrator's]

decision-making process").

B.     Arbitrary and Capricious Review

In the alternative, Ms. Finley argues that, even under the arbitrary and

capricious standard, the Plan is not entitled to summary judgment. For

substantially the same reasons provided by the District Court, we disagree with

Ms. Finley.

1.     *Conflict of Interest*

---

[6] We reach this decision under the 1998 version of 29 C.F.R. § 2560.503-1(h)(1)(i) (1999). Amendments to this provision took effect on January 1, 2002. *See* 65 Fed. Reg. 70265, at 70271 (Nov. 21, 2000). We specifically reserve the question of whether this decision and our decision in *Gilbertson* apply to the regulations as amended. *See* 65 Fed. Reg. 70246, at 70255 n.39 (Nov. 21, 2000) (stating, in explaining deemed denial provisions entitling a beneficiary to sue without exhausting administrative remedies, "that a decision made in the absence of the mandated procedural protections should not be entitled to any judicial deference").

Ms. Finley contends that VPA acted under a conflict of interest and that, consequently, less deference is owed to VPA's decision. "[A]ll of the circuit courts agree that a conflict of interest triggers a less deferential standard of review." *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825 (10th Cir. 1996). Rather than viewing a conflict of interest as presumptive evidence that the plan administrator's decision was arbitrary and capricious, we apply a sliding scale, decreasing the level of deference in proportion to the severity of the conflict. *Id*. at 826-27.

In deciding whether VPA is subject to a conflict of interest, we consider a number of factors, "including whether: (1) the plan is self-funded; (2) the company funding the plan appointed and compensated the plan administrator; (3) the plan administrator's performance reviews or level of compensation were linked to the denial of benefits; and (4) the provision of benefits had a significant economic impact on the company administering the plan." *Kimber v. Thiokol*, 196 F.3d 1092, 1098 (10th Cir. 1999). Here, although the first two factors are present, neither of the latter two apply. VPA receives no financial or evaluative incentives for denying claims. Instead, the Plan pays VPA a flat, quarterly rate. Also, the provision of benefits has no impact on VPA. The Plan's funds, not those of VPA, directly pay all benefits. As in *Kimber*, these facts convince us that VPA did not operate under a conflict of interest. *See id.* (finding no

cognizable conflict of interest even where the first two factors are present).

Ms. Finley's claim that a conflict arises from VPA's statements that it can save disability insurers money does not alter this conclusion. We agree with the District Court that these statements, without additional support, do not establish a legally cognizable conflict. While VPA advertises its ability to save insurers money, it does not elaborate on how these savings would occur. They could occur in many ways, including through decreased administrative costs and the prevention of insurance fraud. The fact that an independent third-party plan administrator might save an insurer money, absent more, does not establish a conflict.

Ms. Finley offers no evidence to show that VPA intended to save its customers money by increasing the number of denied claims. We reject her "common sense" claim that such proof results from the fact that the Plan pays VPA. We do not expect VPA to work for free. While common sense dictates that an insurer is more likely to retain a plan administrator if it reduces the number of approved claims, we find this general motivation, without more, insufficient to rise to the level of a legally cognizable conflict of interest. *See Pitman v. Blue Cross and Blue Shield of Okla.*, 217 F.3d 1291, 1296 (10th Cir. 2000) (finding that an economic interest in the denial of benefits by a plan administrator rises to the level of a legally cognizable conflict of interest only if "the provision of

benefits had a *significant* economic impact on the company administering the plan") (emphasis added).

In addition, the cases Ms. Finley cites in support of her conflict-of-interest argument differ factually from the present one. In *Pitman*, we found a conflict of interest because the defendant administrator, who was also the insurer, had a strong economic incentive to deny claims. *Id.* Likewise, in *Cirulis v. UNUM Corp. Severance Plan*, 321 F.3d 1010 (10th Cir. 2003), we recognized in dicta that the unique situation in which the defendant is simultaneously the plaintiff's employer, the insurer, and the employer of the plan administrator "may, standing alone, provide sufficient evidence of a conflict warranting a reduced level of deference." *Id.* at 1017 n.6. The case before us, however, presents a much different situation: by employing VPA as an independent third-party administrator, the Plan avoids these potential conflicts. *See, e.g., Pitman*, 217 F.3d at 1296. Thus, absent a more particularized showing, we will not find that an independent third-party administrator operates under a conflict of interest simply because it accepts a fee from the insurer for its services and advertises that it can save insurers money.

2.     *Denial of Benefits Under Arbitrary and Capricious Review*

In determining whether VPA's decision is arbitrary and capricious, we consider only "the arguments and evidence before the administrator at the time it

made that decision" and decide: (1) whether substantial evidence supported VPA's decision; (2) whether VPA based its decision on a mistake of law; and (3) whether VPA conducted its review in bad faith or under a conflict of interest. *Sandoval v. Aetna Life and Casualty Ins. Co.*, 967 F.2d 377, 380 & n.4 (10th Cir. 1992). "The Administrator's decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within his knowledge to counter a claim that it was arbitrary or capricious. The decision will be upheld unless it is not grounded on any reasonable basis." *Kimber*, 196 F.3d at 1098 (alterations, quotations, and citations omitted).

Under this standard, the decision to deny benefits was reasonable. VPA had substantial evidence that, as of the eligibility date, Ms. Finley could perform sedentary work. Except for her argument that VPA had to consider Dr. Mahan's May 11, 1998, report, which we rejected above, Ms. Finley does not allege that VPA made an error of law in denying benefits. Finally, VPA did not operate under a conflict of interest nor has Ms. Finley alleged bad faith. Because no genuine issue of material fact exists regarding whether VPA arbitrarily or capriciously denied Ms. Finley long-term benefits, the Plan is entitled to summary judgment. *See* Fed. R. Civ. P. 56(c).

## IV. CONCLUSION

For the previously stated reasons, we AFFIRM the District Court's grant of

summary judgment for the Plan.