**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 11, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

KELLY TE'O, as Personal
Representative of the Estate of
Marvin Anderson,

     Plaintiff-Appellant,

v.

MORGAN STANLEY & CO., INC.;
DISCOVER FINANCIAL SERVICES;
MORGAN STANLEY DIRECTOR OF
GLOBAL HUMAN RESOURCES,

     Defendants-Appellees.

No. 07-4277
(D.C. No. 2:07-CV-00184-DS)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **PORFILIO**, and **O'BRIEN**, Circuit Judges.

Kelly Te'O, as personal representative of the estate of Marvin Anderson,

appeals from the district court's entry of judgment in favor of defendants on

Mr. Anderson's claims under the Employee Retirement Income Security Act of

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

1974, as amended (ERISA).  *See* 29 U.S.C. §§ 1001-1461.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  Background

Mr. Anderson worked for defendant Discover Financial Services until May 31, 2006.  Based on congestive heart failure, he filed a claim for short-term disability (STD) benefits as of that date under the Morgan Stanley Disability Plan (Plan).[1]  The Summary Plan Description (SPD) defines "disability" as follows:

> You are considered disabled if, based on medical information provided by your physician, the claims administrator determines that as a result of illness, injury or pregnancy you are not working in any occupation and you are:
>
> - Unable to perform the essential functions of your regularly scheduled occupation, or
> - Unable to perform any other job Morgan Stanley offers you for which you are qualified[.]

Aplt. App. at 11.  Another document titled "Disability Plan Highlights" informs the prospective claimant that "[a]lthough you do not need to be confined to a hospital to receive STD benefits, you must be under the regular care of a physician who provides medical information to support the determination that you are disabled and who is qualified to treat the type of injury or illness for which your claim is made."  *Id.* at 40.[2]

---

[1]     At all times relevant to this appeal, Discover Financial was a subsidiary of Morgan Stanley.

[2]     Appellant has provided only a copy of the SPD, *see* Aplt. App. at 7-38, and
(continued...)

Reed Group, the third-party claim administrator, issued an initial denial of

Mr. Anderson's claim on June 30, 2006. The basis for the decision was that

contrary to the Plan's requirements, Mr. Anderson had not provided sufficient

objective medical information to support a finding that he was disabled within the

meaning of the Plan. The denial letter recited the definition of disability from the

Plan, as well as the requirement that he be under the regular care of a physician

qualified to treat his type of illness. The medical evidence on which the initial

denial was based consisted of a report dated May 3, 2006, prepared by

Mr. Anderson's primary care physician, Dr. James Coy, and discharge

instructions related to a May 7, 2006, visit to an emergency center. In the May 3

report, Dr. Coy diagnosed a variety of ailments, including acute myocardial

infarction, congestive heart failure, chronic obstructive pulmonary disease, and

coronary artery disease. Supp. App. at 119.[3] He recommended that Mr. Anderson

---

[2](...continued)
an excerpt of the "Disability Plan Highlights," *see id.* at 39-42. The parties
appear to agree that the provisions in these documents are controlling, and we
proceed under that framework.

[3]     Like many of the documents relevant to the issues raised in this appeal,
defendants have provided Dr. Coy's May 3 report. In our discretion, we have
overlooked a number of serious deficiencies in Mr. Anderson's appendix, such as
his failure to include copies of (1) the complaint; (2) the motions for judgment on
the administrative record together with supporting documentation; and (3) any
responses or replies to those motions, as required by 10th Cir. R. 10.3(C), (D)(2),
and 31.1(A)(1). *See Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1235 n.13
(10th Cir. 2007); *Steele v. Thiokol Corp.*, 241 F.3d 1248, 1250 n.1 (10th Cir.
2001); 10th Cir. R. 10.3(B), 30.1(A)(3). We remind litigants that "[a]n appellant
(continued...)

immediately go by ambulance to the nearest emergency room because the myocardial infarction was likely exacerbating his congestive heart failure and delay in treatment could lead to death. *Id.* Mr. Anderson refused, stating that he would take himself to a hospital after he went home and called his wife, who was on vacation. *Id.*

Mr. Anderson apparently took himself to an emergency center on May 7. Reed Group received discharge instructions from this visit prior to its June 30 denial, but did not obtain the treating physician's report until July 3, 2006. *See id.* at 141 (second entry dated 7/3/06). The emergency center report was signed by Celeste Raffin, M.D., who stated that she felt "very strongly [that Mr. Anderson] needs to come into the hospital and get studied, and most likely have a cath[4] done. The patient however is adamantly against this." *Id.* at 130. Dr. Raffin argued with Mr. Anderson "for at least 20 minutes" about this, and concluded that he "has a morbid fear of hospitals [and] is [in] huge denial about his health problems, and unfortunately he just does not want to participate in his health care, although he has been given numerous chances." *Id.* According to Dr. Raffin, Mr. Anderson stated that he would follow up with the Veteran's

---

[3](...continued)
who provides an inadequate record does so at his peril." *Dikeman v. Nat'l Educators, Inc.*, 81 F.3d 949, 955 (10th Cir. 1996).

[4]    Dr. Raffin apparently was referring to a cardiac catheterization.

-4-

Administration (VA) and, in response to her warning that his life was in danger, stated that he would be "around 'forever' and feels that he should go home." *Id.*

In addition to Dr. Raffin's report, Reed Group received additional medical records from the VA dated between December 2003 and April 2006. Based on the new medical evidence, Reed Group sent a letter dated July 6, 2006, that updated the reasons for denying Mr. Anderson's claim. Reed Group stated that because all of the medical records Mr. Anderson had provided predated the date of his application, he had not "provide[d] sufficient current objective medical evidence to support disability." *Id.* at 62.[5] Like the first letter, the second letter recited the definition of disability from the Plan and the requirement that he be under the regular care of a physician qualified to treat his type of illness.

After receiving the second letter denying his claim, Mr. Anderson requested a claim review. As part of this review, Reed Group received additional medical records, including two documents from Dr. Coy relating to a July 7, 2006, examination. In an attending physician's statement, Dr. Coy opined that Mr. Anderson was to remain out of work "until cleared by cardiology." *Id.*

---

[5]     Reed Group's notes of telephone communications with Mr. Anderson reflect that he was told of the need for medical records post-dating the effective date of his claim on at least two occasions before the July 6 denial, *see* Supp. App. at 140 (entry dated 6/29/06); 141 (third entry dated 6/30/06), as well as on July 6, *see id.* at 142 (second entry dated 7/6/06). In relevant part, the SPD informs a claimant that "[y]ou must see your physician prior to the seventh consecutive calendar day following your last day worked in order to receive full benefits under the Plan. Failure to receive prompt treatment from your physician may delay or reduce your benefits." Aplt. App. at 13.

at 131. In a letter dated July 19, 2006, Dr. Coy stated that Mr. Anderson has "Class III congestive heart failure. He has not seen cardiology since 2002. I have attempted to coordinate/facilitate cardiology follow up. Patient is unable to work at all due to CHF symptoms." Aplt. App. at 45.

In an August 16 letter, Reed Group noted Dr. Coy's recommendation that Mr. Anderson be cleared by a cardiologist and observed that Mr. Anderson had not provided any information from a cardiologist. *See* Supp. App. at 64. Accordingly, Reed Group again denied his claim, once again setting forth the same Plan provisions that supported its earlier denials.

Mr. Anderson then appealed to the Reed Group. It appears that he submitted one additional piece of evidence in support of his appeal, an echocardiogram report dated September 7, 2006. That report was signed by an "echo tech" and co-signed by Dr. Sheldon Litwin as "attending physician cardiology." *Id.* at 133 (typeface altered). The report indicates moderate to severe problems suggesting ischemic heart disease and concludes that "[i]f clinically appropriate, patient might be considered for ventricular reconstructive surgery." *Id.*

In processing the appeal, Reed Group obtained the opinion of Dr. David Richardson, a board-certified physician in cardiovascular disease and internal medicine. Dr. Richardson noted that the records he reviewed did not contain a note from a cardiologist and stated that there was no medical reason preventing

-6-

Mr. Anderson from seeking appropriate care and treatment for his condition. Based on his review of the medical records provided to him, Dr. Richardson concluded that Mr. Anderson "was totally disabled and unable to work from [May 31, 2006,] forward." Aplt. App. at 47. Dr. Richardson further stated that Mr. Anderson "is unlikely to improve with any treatment short of a mechanical ventricular assist device or cardiac transplantation[,]" and he "agree[d] with Mr. Anderson's reluctance to undertake such treatment and believe[d] that Mr. Anderson should not work." *Id.*

Reed Group denied the appeal on November 22, 2006, informing Mr. Anderson that, despite the results of the echocardiogram, which supported a finding of disability, he was "not in appropriate treatment for [his] health condition." Aplt. App. at 49. Mr. Anderson then filed this action, and the parties filed cross-motions for judgment on the administrative record. The district court granted defendants' motion and denied Mr. Anderson's motion. This appeal ensued, taken by the personal representative of Mr. Anderson's estate.

## II. Standard of Review

The parties agree that Reed Group, as the claim administrator, had discretion to determine eligibility for benefits. Therefore, we review the "decision to deny benefits under the arbitrary and capricious standard." *Finley v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 379 F.3d 1168, 1173 (10th Cir. 2004). Under that standard, "we consider only the arguments and

evidence before the administrator at the time it made that decision and decide . . .

whether substantial evidence supported [the administrator's] decision."[6]  *Id.*

at 1176 (quotation omitted).  A claims "decision need not be the only logical one

nor even the best one.  It need only be sufficiently supported by facts within [the

administrator's] knowledge to counter a claim that it was arbitrary or capricious.

The decision will be upheld unless it is not grounded on any reasonable basis."

*Id.* (quotation omitted).

### III.  Discussion

Appellant argues that it was arbitrary and capricious for Reed Group to

deny Mr. Anderson's claim for STD benefits because

> (1) he was under the care of his primary physician [Dr. Coy],
> (2) short of major surgery there was no treatment that would restore
> his health so that he could work, (3) the Plan did not require him to
> undergo major surgery, (4) [defendants'] expert[, Dr. Richardson,]
> agreed with Mr. Anderson's decision not to undergo surgery, [and]
> (5) [Dr. Richardson] opined that without surgery no treatment would
> restore Mr. Anderson's health so that he could work.

Aplt. Br. at 18.  These points largely skirt the basis for Reed Group's denial of

the claim.  The issue is whether Mr. Anderson complied with the Plan

requirement that he be "under the regular care of a physician who provides

medical information to support the determination that [he is] disabled and who is

---

[6]    Appellant does not argue, nor do we perceive, that Reed Group "based its
decision on a mistake of law [or] conducted its review in bad faith or under a
conflict of interest," either of which also would properly support a conclusion that
the claims decision was arbitrary and capricious.  *See Finley*, 379 F.3d at 1176
(quotation omitted).

qualified to treat the type of injury or illness for which [his] claim is made."

Aplt. App. at 40. In Mr. Anderson's case, as recommended by both Dr. Coy and Dr. Raffin, that physician was a cardiologist. While not explicitly mentioning a cardiologist in its first two claim-denial letters, Reed Group's August 16 letter informed Mr. Anderson specifically that his failure to submit any information from a cardiologist contravened Dr. Coy's recommendation as well as the Plan's requirement. Further, there is no indication that he was in the regular care of Dr. Litwin, the attending cardiologist who co-signed his echocardiogram report. Rather, Dr. Litwin's own conclusion, that "*[i]f clinically appropriate*, [Mr. Anderson] might be considered for ventricular reconstructive surgery," Supp. App. at 133 (emphasis added), is consistent with the opinions of Dr. Coy and Dr. Raffin that Mr. Anderson needed further examination by a cardiologist to determine possible treatment options.

Appellant seems to miss the point, which is that Reed Group required Mr. Anderson only to see a cardiologist who could examine him and provide information regarding his condition, not to complete any particular form of treatment for his condition. Thus, the bulk of appellant's reliance on ERISA case law, as well as on social-security case law and regulations, that discuss a claimant's decision to refuse treatment is misplaced. To be clear, the problem is not that Mr. Anderson refused to follow recommended treatment, but that he refused to submit to the regular care of a physician qualified to treat his

illness—in this case, a cardiologist—so that Reed Group could have the opinion of a treating specialist on which to base an informed disability determination.

Nor do we find any merit in the contention that defendants' expert, Dr. Richardson, "conclusively indicated to the [defendants] that no treatment was available to ameliorate [Mr. Anderson's] condition short of a mechanical ventricular assist device or cardiac transplantation." Aplt. Br. at 12. Dr. Richardson noted in his report that the medical records provided for his review did not include a note from a cardiologist. Supp. App. at 66. Although Mr. Anderson correctly notes that Dr. Richardson himself never stated that the medical evidence was insufficient for purposes of his opinion, it was not arbitrary or capricious for Reed Group to disregard his opinion on the ground that there were no medical records from an examining cardiologist. In fact, Reed Group's insistence that Mr. Anderson be in the care of a cardiologist is consistent with his treating physicians' recommendations that he do so.

### IV. Conclusion

Based on the foregoing, we conclude that because substantial evidence supports the denial of Mr. Anderson's claim and Reed Group had a reasonable basis for its decision, the denial of benefits was not arbitrary or capricious. *See Finley*, 379 F.3d at 1176. Contrary to appellant's contentions, the claim does not have substantial merit, nor is it one of great public importance, so we deny the request for an award of attorney fees under 29 U.S.C. § 1132(g). *See Gordon v.*

-10-

*U.S. Steel Corp.*, 724 F.2d 106, 109 (10th Cir. 1983) (setting forth factors relevant to attorney-fee decisions in ERISA cases).

The judgment of the district court is AFFIRMED.

Entered for the Court


Terrence L. O'Brien
Circuit Judge