Gerald F. KOLPACKE, Plaintiff,

v.

CSX PENSION PLAN, CSX Transportation, Inc., CSX Corporation, CSX Corporation Comprehensive Medical Plan, and CSX Group Life Insurance Plan, Defendants.

No. 05–73734.

United States District Court,
E.D. Michigan,
Southern Division.

March 14, 2007.

Order Denying Reconsideration
July 6, 2007.

Randall E. Phillips, Provizer & Phillips, Bingham Farms, MI, for Plaintiff.

Christopher G. Bernard, Bodman, Ann Arbor, MI, James R. Buschmann, Bodman, Longley, MI, for Defendants.

## ORDER

VICTORIA A. ROBERTS, District Judge.

### I. INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Summary Judgment and Defendants' Cross–Motion for Summary Judgment. For the following rea-

sons, the Court **DENIES** in part and **GRANTS** in part both motions.

## II. BACKGROUND

Gerald Kolpacke ("Plaintiff") worked for CSX Transportation, Inc. ("CSX") for thirty-two years. While he hired in as a Union employee, on August 1, 1993, he was transferred and became a salaried non-union employee. Plaintiff worked as a Railroad Police Officer. In 2003, CSX informed him that he may be laid off and offered him a severance package. Plaintiff accepted and left his position on July 16, 2003. However, in June 2004, Plaintiff was rehired into a conductor training program. This was a probationary position. On September 20, 2004, CSX terminated him.

During his employment as a Railroad Police Officer, Plaintiff participated in the CSX Pension Plan ("Plan"). When Plaintiff left CSX in 2003, he had 10 years of Credited Service ("Service") under the Plan and was 54 years old. Upon his termination from the conductor training, Plaintiff inquired about his eligibility for early retirement.

Under Section 4.03 of the Plan, a member who had not reached the normal retirement age of 62, but who had completed at least ten years of Service and attained age 55, could retire early and receive pension benefits. At the time of his request, Plaintiff's 55th birthday was about a month away, October 22, 2004. On October 13, 2004, Kathy Hicks ("Hicks"), Manager of Pension Administration, responded by letter to Plaintiff:

> Per your request, listed below are the pension benefits you have accrued as of November 1, 2004. Our records show *you are eligible to retire immediately.* The amount of your accrued benefit is stated below and will be paid to you in monthly installments for your lifetime.

> The figures are based on a single life or 50% joint and survivor annuity. If you choose the 75% or 100% survivor option, your benefit will be reduced. The benefit has already been offset for railroad retirement and will not be reduced any further. [chart]

> When you determine your retirement date, please return your completed retirement forms.

R. 5 (emphasis added).

A chart within the letter illustrates that Plaintiff was to receive $492.60 monthly. Plaintiff proceeded with his retirement application. On his 55th birthday, October 22, 2004, he received a letter from the CSX Benefits Department ("Benefits Department") stating that his retirement was approved and his monthly benefit would be $84.98. Given this disparity, Plaintiff, via his attorney, on March 30, 2005 sent a letter to Hicks stating that his benefits were incorrect. He requested correction. Plaintiff also argued that as a retiree he was entitled to medical coverage and life insurance benefits.

On May 5, 2005, the Benefits Department denied Plaintiff's request. It said that he was entitled to benefits accrued only while he was a salaried employee and not while he was in conductor training, a union position by a nonparticipating affiliate. The Benefits Department concluded that because Plaintiff left his salaried position in 2003 before he reached age 55, he was not entitled to early retirement under the Plan. Rather, he was only entitled to his pension benefits as a vested terminated plan participant. The amount of his pension was significantly reduced because as a vested terminated plan participant Plaintiff received a reduction for his railroad retirement and for commencing the benefits before reaching retirement age.

On May 20, 2005, Plaintiff appealed the decision to the Administrative Committee,

expecting a final decision within 60 days. On June 17, 2005, prior to the Administrative Committee's decision, Hicks sent a letter to the committee explaining Plaintiff's benefits calculation. She noted that the October 13, 2004 letter was based on a calculation error from the pension system, which calculated the benefits as if Plaintiff was retiring from active status. Hicks also informed the Administrative Committee that while Plaintiff was in conductor training he was a union employee, covered by a collective bargaining agreement and hence, was not a Member of the Plan. While Hicks did not make a recommendation to the Committee, she did state that the "facts as she interpreted them" illustrate Plaintiff is not entitled to a benefit increase or medical and insurance coverage.

On August 8, 2005, the Administrative Committee denied Plaintiff's request for additional pension, medical, and life insurance benefits. It stated: (1) since Mr. Kolpacke was only 54 years of age, he was not eligible to retire immediately. Therefore, he became a vested participant and was eligible to commence benefits at age 55; (2) Plaintiff accepted a union position with the Company which did not provide for membership in the Plan; (3) the letter dated October 13, 2004 providing him with a benefit calculation was computed incorrectly; (4) Plaintiff's benefit includes an early commencement offset of 60% because he was not an employee that went directly from active status to retirement; (5) Plaintiff's benefit is also subject to an immediate railroad retirement offset because of his terminated vested status; and (6) because Plaintiff had not reached his retirement age by his termination date he was not eligible for medical or life insurance coverage.

After exhausting administrative remedies, Plaintiff filed suit against the Defendants challenging the Administrative Committee's decision as arbitrary and capricious. Plaintiff's complaint alleges: (1) denial of benefits under ERISA; (2) breach of contract; and (3) equitable estoppel.

## III. STANDARD OF REVIEW

■ In *Wilkins v. Baptist Healthcare Sys., Inc.*, the Sixth Circuit held that summary judgment is an inappropriate mechanism for ERISA claims. 150 F.3d 609, 613 (6th Cir.1998). "As a general principle of ERISA law, federal courts review a plan administrator's denial of benefits *de novo*, 'unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *McDonald v. Western–Southern Life Ins. Co.*, 347 F.3d 161, 168–169 (6th Cir.2003)(citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir.1998))(citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). When a plan administrator has discretionary authority to determine benefits, the Court will review a decision to deny benefits under "the highly deferential arbitrary and capricious standard of review." *Id.* at 169 (citing *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir.1996)).

■ Section 7.07 of the Plan provides that the Plan Administrator shall have the exclusive discretionary authority to interpret and construe the provisions of the Plan, including the discretion to determine questions concerning eligibility for benefits and coverage. R. 1 at 41. Although Plaintiff admits the arbitrary and capricious standard would ordinarily apply he argues that the *de novo* standard applies here because the Administrative Committee did not render its decision within 60 days. In support of his contention, Plaintiff cites 29 C.F.R. § 2560.503–1(h)(4)(1) and *Univ.*

*Hosp. of Cleveland v. Emerson Elec. Co.,* 202 F.3d 839, 845 (6th Cir.2000).

In *Emerson Elec.,* the Sixth Circuit noted that under 29 C.F.R. § 2560.503–1(h)(4)(1), "if a plan administrator fails to timely decided an appeal of a claim denial, the challenged claim shall be deemed "denied on review"" and "the claimant may bring a civil action to have the merits of his appeal determined." *Id.* at 846, n. 3. The Court stated that although the regulation does not address the applicable standard of review in such circumstances, "there is undeniable logic in the view that a plan administrator should forfeit deferential review by failing to exercise its discretion in a timely manner." *Id.* Ultimately, the Court did not decide the question because the result would have been the same under either standard.

In rebuttal, Defendants point out that the Sixth Circuit adopted a "substantial compliance" rule in determining whether denial notices meet ERISA requirements under 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503–1(h)(4), (1). *See McCartha v. Nat'l City Corp.,* 419 F.3d 437 (6th Cir. 2005); *see also Kent v. United of Omaha Life Ins. Co.,* 96 F.3d 803 (6th Cir. 1996)(ERISA requires a plan to provide participants with adequate notice of reasons for denial of benefits and a reasonable opportunity for full and fair review). Under this rule, if an administrator fails to render a timely decision that "substantially complies" with the regulatory requirements, *de novo* review does not apply. *Finley v. Hewlett–Packard Co. Emp. Ben. Org. Income Protection Plan,* 379 F.3d 1168, 1174 (10th Cir.2004). An administrator substantially complies when the delay is inconsequential or pursuant to an "ongoing, good-faith exchange of information between the administrator and the claimant." *Id.*

There is no dispute that Defendants failed to timely render a final decision.

Defendants assert, nonetheless, that they substantially complied and their 17 day delay was inconsequential. Further, Defendants note that, unlike the cases cited by Plaintiff, they actually rendered a decision and, therefore, are entitled to a deferential standard of review. *See Gilbertson v. Allied Signal, Inc.,* 328 F.3d 625 (10th Cir.2003)(stating that de novo review is not required for every decision that comes on the 61st day); *cf. Jebian v. Hewlett–Packard Co. Emp. Bene. Org. Income Protection Plan,* 349 F.3d 1098 (9th Cir.2003)(holding that de novo review was appropriate where plan administrator failed to decide the appeal for more than 11 months after it was filed, and did not render a decision until a law suit commenced); *Nichols v. Prudential Ins. Co. of Am.,* 406 F.3d 98 (2d Cir.2005)(holding that a deferential standard of review was inappropriate when the plan administrator had not exercised its discretion by failing to render any decision at all).

The Court recognizes that the procedures utilized here were technically deficient (the decision issuing 17 days after the deadline). However, the delay was *de minimus* in that it did not prevent Plaintiff from pursuing his rights for an unreasonable period of time. The Court concludes that Defendants substantially complied with the procedural requirements and *de novo* review is not applicable; review is conducted under the arbitrary and capricious standard.

■ In addition, Plaintiff argues for *de novo* review of the medical and insurance coverage decisions. Unlike the Plan, Plaintiff asserts that the medical plan and insurance coverage do not contain provisions granting the administrator discretionary authority.

Defendants counter that the medical plan section entitled "Plan Interpretation" confers the administrator with power to

interpret the Plan and construe ambiguous provisions. The section states in pertinent part:

> the Plan Administrator and the Administrative Committee (or their respective delegates) shall have the discretion to make any findings of fact needed in the administration of the Comprehensive Medical Plan, and shall have the discretion to interpret or construe ambiguous, unclear or implied (but omitted) terms in any fashion they deem to be appropriate in their sole judgment.

Def. R. 4 at 81.

In addition, the Insurance coverage section entitled "Duties of Plan Administrator" states that the Plan Administrator shall have the power "to construe and interpret the plans as it, in its sole discretion, deems to be appropriate; and determine all questions related to the eligibility of persons to participate or receive benefits. . . ." Def. R. 3 at 10. Despite Plaintiff's contentions, the Court finds that this language is similar to the language used in the Plan. To be sure, it is clear that the medical plan and insurance coverage are not simply silent on discretionary authority.

■ The *de novo* standard is only appropriate in the absence of a clear grant of discretion to the administrator. *Brown v. Ampco–Pittsburgh Corp.*, 876 F.2d 546, 550 (6th Cir.1989). Both the medical and insurance coverage plans give the administrator discretionary authority to determine eligibility for benefits and to construe the terms of the plans. Consequently, application of the highly deferential arbitrary and capricious standard of review is mandated.

■ The arbitrary and capricious standard of review "is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation based on the evidence for a particular outcome, that outcome is not arbitrary or capricious." *Shields v. Reader's Digest Ass'n Inc.*, 331 F.3d 536, 541 (6th Cir.2003)(internal citations and quotations omitted). Put differently, a decision regarding eligibility for benefits is not arbitrary or capricious if the decision is "rational in light of the plans provisions." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir.1988). A decision reviewed under this standard must be upheld if it is "rational in light of the plan's provisions." *Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir.1998).

## IV. APPLICABLE LAW AND ANALYSIS

### A. Preliminary Issue

#### 1. *Conflict of Interest*

■ Because Defendants' fund and administer the Plan, Plaintiff argues that the Court must take into account the administrative committee's self-interest in applying the arbitrary and capricious standard. This is true. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)(stating that courts should be attentive to conflicts of interest in this context); *see also Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 847 n. 4 (6th Cir.2000)(noting a potential for self-interested decision making when the plan sponsor bears all or most of the risk of paying claims, and also appoints the body designated as the final arbiter of such claims). However, the Sixth Circuit "has rejected the notion that the conflict of interest inherent in self-funded and self-administered plans alters the standard of review." *McCartha v. Nat'l City Corp.*, 419 F.3d 437 (6th Cir. 2005). Thus, the Court will consider Defendants' potential conflict of interest while applying the arbitrary and capricious standard.

## 2. *Applicable Plan*

██ Defendants assert that while Plaintiff and the Administrative record reference the October 2004 CSX Pension Plan and Summary Plan Description ("SPD"), the CSX Pension Plan Amended and Restated through July 10, 2002 and the Summary Plan Description dated April 1998 govern. Defendants explain that the October 2004 Plan came into existence after Plaintiff terminated salaried employment in July, 2003, but before his claims were asserted and decided in 2005.

██ In reviewing an ERISA claim, the Court must make findings of fact and conclusions of law based solely on the administrative record. *Wilkins v. Baptist Healthcare Sys. Inc.,* 150 F.3d 609 (6th Cir.1998)(holding that district courts should adjudicate an ERISA action as if it were conducting a standard bench trial). The 2004 Plan was included in the Administrative record. Most importantly, the Administrative Committee relied on the 2004 Plan in rendering its decision. Therefore, the Court will also rely on the 2004 Plan in reviewing the Administrative Committee's interpretation of the Plan provisions.

## B. ERISA Benefits—Count I

Plaintiff challenges Defendants' denial of benefits pursuant to the Employment Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1132 et seq. Section 502(a)(1)(B) of ERISA gives a participant or beneficiary the right to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Plaintiff alleges that Defendants' denial of benefits was arbitrary and capricious because the administrators: (1) improperly reduced his benefit on account of early retirement by applying a formula applicable to plan participants who terminate employment before eligibility to retire; and (2) improperly offset his pension benefit by his estimated Railroad Retirement benefit before his Railroad Retirement benefit actually commences. According to Plaintiff, the Plan does not allow for this interpretation.

In its initial denial of Plaintiff's claim for benefits, the Benefits Department explained that because Plaintiff retired from his salaried position before reaching age 55 and returned to work as an union employee covered by a collective bargaining agreement, he was only entitled to benefits accrued while he was a salaried employee and those benefits were subject to reduction due to both his early retirement and railroad retirement benefits.

██ The Administrative Committee provided a similar explanation for its denial of Plaintiff's claim. After explaining the relevant Plan terms, the Administrative Committee concluded that the early commencement offset and railroad retirement offset were properly deducted from Plaintiff's benefits. Like the Benefits Department, the Administrative Committee found that Plaintiff was a terminated vested employee because he retired before age 55. Under this category, commencement of benefits prior to normal retirement does not delay the offset of railroad retirement benefits. The Administrative Committee cites Section 4.05(a) of the 2004 Plan as governing "terminated vested" employees. It provides:

A Member shall be 100 percent vested in, and have a nonforfeitable right to, his Accrued Benefit. . . . If a Member's employment with an Employer is subsequently terminated for reasons other than retirement . . . he shall be eligible for a vested Pension in accordance with subsection (b) and (c) below . . .

Section 4.05(b) provides: "The payment of a Member's vested Pension shall commence on the Member's Normal Retirement Date and ... shall be equal to one-twelfth of his Accrued Benefit." Section 4.05(c) states:

A member who has completed at least 10 years of Service and who has attained his 55th birthday ... may elect to commence his vested Pension prior to his Normal Retirement Date on the first day of the month following the date the Administrator receives his election. The Member's vested Pension shall be reduced by one-half percent of one percent for each month by which the Member's Annuity Starting date precedes his Normal Retirement Date....

Plaintiff argues that Defendants' interpretation of the Plan is erroneous and that "Section 4.04 Early Retirement" is the provision under which he is entitled to benefits.

Section 4.04 provides:

A Member who has not reached his Normal Retirement Age but who has completed at least 10 years of Service and attained age 55 ... may elect to retire on the first day of the calendar month after the Administrator receives his written application to retire. The early retirement pension shall be a deferred Pension beginning on the Member's Normal Retirement Date. However, the Member may elect to receive an early retirement Pension, in an amount described in subsection (b) below, beginning prior to his Normal Retirement Date on the first day of the month following the date the Administrator receives his election.

(b) The early retirement Pension of a Member who has elected to commence receiving his early retirement Pension immediately upon his retirement from active service, pursuant to Section 4.04(a), shall be equal to one-twelfth of (1) less (2), where:

(1) is the Member's Gross Pension ... reduced by 1/360 for each month by which the Member's Annuity Starting Date precedes his 60th birthday; and

(2) is the Offset for the Member's Social Security Benefit and Railroad Retirement Benefit.... [N]o Offset shall be applied before the Member first becomes entitled to Social Security Benefits or Railroad Retirement Benefits, whichever entitlement first occurs.

The Administrative Committee was not arbitrary or capricious in its decision that Section 4.04 does not apply. By its terms, it requires that the Member be 55 years old in order to even make the election to receive an early retirement Pension. Plaintiff's arguments that he left his salaried position at age 54, was rehired into the conductor training program, was covered by a collective bargaining agreement while in the training program, and that the date his benefits were determined dictate the age he was when his election was made, are all unavailing. Plaintiff simply had not attained the age necessary for early retirement under the Plan.

Plaintiff's attempt to bring this case within section 4.04 by arguing that there is a one month grace period also fails. Plaintiff contends that the language in section 4.04, which states "A member who has not reached his Normal Retirement Age but who has completed at least ten years of Service and attained age 55 ... may elect to receive an early retirement Pension, ..., beginning prior to his Normal Retirement Date on the first day of the month following the date the Administrator receives his election," establishes a one month grace period. Plaintiff argues that this grace period allows for a Plan partici-

pant to elect early retirement so long as he reaches the requisite age within a month prior to commencement of benefits.

This provision, however, does nothing more than provide a time line for when the employee will receive the benefit after election of early retirement. Even if the Court agreed that this language establishes a grace period, it is undisputed that the condition precedent to electing early retirement is the attainment of age 55.

In addition, Plaintiff argues that section 1.06 of the Plan provides that the date the benefits are determined is also the date that determines a Plan Participant's age for retirement purposes. Section 1.06 states: "Age means the attained age of a Member in completed years as of the Date of Determination." While Plaintiff makes much of the term "date of Determination," the Court notes that this terms is not used in section 4.04. Plaintiff's interpretation and application of this term to the early retirement provision is a tenuous interpretation of the Plan's plain language. Plaintiff's approach would base an employee's age for purposes of retirement on the date he or she received a "Determination" of eligibility letter, rather than the employee's actual age when he elects retirement. Ironically, Plaintiff received his letter on his 55th birthday. However, the Court finds that the plain language of the Plan does not support his interpretation. Plaintiff's claim fails because he cannot show, as he must, that he elected his benefits at age 55.

Based on the evidence, Defendant's application of section 4.05 was reasoned and rational and, therefore, not arbitrary and capricious. *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir.1989) ("When it is possible to offer a reasoned explanation, based on the evi-

dence, for a particular outcome, that outcome is not arbitrary or capricious.")(internal quotations and citation omitted).

**1. Railroad Offset**

Plaintiff argues that Defendants erred in immediately reducing his benefit by 60% for Railroad Retirement Benefits. He asserts that even if section 4.05 is the proper section to apply, that section does not require a deduction for Railroad Retirement benefits and especially not prior to eligibility. Plaintiff contends that any other interpretation is unreasonable and contrary to the plain language of the Plan. In addition, Plaintiff points out that in her letter to the Administrative Committee, Hicks noted that section 4.05 of the Plan does not specifically state the benefit calculation will be immediately offset for railroad retirement benefits.[1] Pl. R. 9 at 2.

The Court agrees with Plaintiff that Defendant's attempt to read Section 4.02 into 4.05, is arbitrary and capricious. By its own heading and language, 4.02 pertains to "Normal Retirement." While Defendants argue that 4.02(b) carries over into the Plan sections governing early retirement, late retirement, vested pension, and disability retirement pension, each of those sections with the exception of section 4.05—specifically states that the pension shall be calculated in accordance with section 4.02(b). To the extent that the Plan's language is susceptible to more than one interpretation, the Court will construe ambiguities against Defendants as the drafting party. *Perez v. Aetna Life Ins. Co.*, 150 F.3d, 550, 557 n. 7 (6th Cir.1998).

▇▇▇ The Plan language demonstrates that Defendants exceeded their power to "interpret" the Plan and effectively re-

1. Hicks also states that a Plan change on 1/1/91 required the immediate offset of Railroad Retirement benefits to be apart of a

section 4.05 calculation. Neither party, however, provided any evidence to support or refute this claim.

wrote the railroad retirement offset into section 4.05. On its face, section 4.05 only requires a 66 2/3% reduction of benefits. It is an impermissible act of construction to augment this language with the railroad retirement offset based in section 4.02(b) when every other provision specifically addresses the application of the offset. The terms of the Plan must be construed "according to their plain meaning, in an ordinary and popular sense." *Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 849 (6th Cir.2000)(citing *Perez*, 150 F.3d at 556).

■ However, the Court notes that the SPD does provide notice to participants that railroad retirement benefits would be offset if they retired before age 55. The SPD does not limit or contradict the explicit terms of section 4.05. Rather, the SPD provides participants with notice of the possible benefit calculations if they leave prior to normal retirement. Although Plaintiff's argument—no offset should be applied absent a specific Plan provision—has logical merit, the Court reiterates that the proper standard of review is arbitrary and capricious. Moreover, the Court may not invalidate the decision merely because the Court disagrees with it. The Defendant's interpretation of the Plan must be unreasonable. Defendants' application of the SPD's interpretation of section 4.05 is reasonable and supports a finding that their denial of increased benefits was not arbitrary or capricious.

### 2. Medical and Insurance Coverage

■ Defendant's denial of medical and insurance coverage was not arbitrary and capricious. Under the terms of the medical and insurance plans, a participant may be eligible for continued coverage as a retired employee. A participant is an "eligible" retired employee if he retired under the CSX Pension Plan and immediately prior to retirement was assigned to a full-

time, salaried position. Def. R. 3 at 1; Def. R. 4 at 5. For the reasons previously discussed, Plaintiff was not terminated from a full-time, salaried position when he elected his benefits in 2004. Plaintiff was terminated from his salaried position with Defendants on July 16, 2003, long before he was eligible to retire. Therefore, Plaintiff is ineligible to receive continued medical and insurance coverage.

### C. State Law Breach of Contract Claim—Count II

■ Count II of Plaintiff's complaint alleges breach of contract. Defendants argue that this common-law claim is preempted by ERISA and, therefore, should be dismissed. Plaintiff does not argue to the contrary.

The Sixth Circuit "has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 453 (6th Cir.2003)(citing *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991)). The term "relate to" is given broad interpretation. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The law only needs to have "a connection with or reference to" a benefit plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). In deciding whether state law-claims are preempted by ERISA, the Court must focus on the remedy sought by Plaintiff. *See Marks*, 342 F.3d at 453.

Plaintiff's complaint succinctly alleges that "Defendant's (sic) refusal to pay and award proper benefits is a breach of contract." (Pl.Compl.¶ 23). Plaintiff also seeks damages equaling the benefits he would have received under the Plan; thus, his claims relate to an ERISA benefit plan. Because "the preemption provision was in-

tended to displace all state laws that fall within its sphere," Plaintiff's breach of contract claim is dismissed. *Metro. Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

### D. Equitable Estoppel—Count III

■ Plaintiff argues that Defendants' October 13, 2004 letter lulled him to apply for early commencement of benefits and, therefore, Defendants should be estopped from denying him the benefit amount represented in the letter.

Recognizing that the October 13, 2004 letter may have misled Plaintiff, Defendants offered to stipulate to a judgment permitting Plaintiff to withdraw his election of early benefits to a later date in conformity with the Plan. Defendants would allow the later commencement date to include Plaintiff's entire accrued benefit, provided that Plaintiff repays the benefits paid to date, or the Pension Plan would actuarially reduce his future benefit to account for the benefits paid to date. It appears Plaintiff did not accept this offer.

The Sixth Circuit has recognized that "equitable estoppel may be a viable theory in ERISA cases" so long as the party does not seek to estop the application of an unambiguous written provision in an ERISA plan. *Marks,* 342 F.3d at 456. To set forth a claim for equitable estoppel, a plaintiff must plead five elements:

(1) [T]here must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or

justifiably rely on the representation to his detriment. *Id.*

Plaintiff's complaint alleges each of the five elements. The October 13, 2004 letter notified him that he was eligible to "retire immediately," the amount of his accrued benefit would be $492.00, and that the "benefit had already been offset for railroad retirement and will not be reduced any further." Defendants admit that this letter, an alleged mistake in calculation, was relied upon by Plaintiff. According to Hicks, the letter incorrectly calculated Plaintiff's benefits as if he was retiring from active status. R. 13. The mistake was corrected 9 days after Plaintiff elected to retire.

■ As the *Marks* Court stated, "[a] party cannot seek to estop the application of an unambiguous written provision in an ERISA plan." *Id.* "Estoppel can only be invoked in the context of ambiguous plan provisions." *Sprague v. General Motors Corp.,* 133 F.3d 388, 404 (6th Cir.1998) (en banc). Thus, Plaintiff cannot prevail on his claim against Defendants—even if Defendants' representatives made misleading statements about his benefits—unless he shows that the terms of the Plan are ambiguous. *See Shepherd v. Dana Corp.,* 205 F.3d 1341 (6th Cir.2000)(holding that equitable estoppel theory was inapplicable even though the plaintiff reasonably relied on the defendant's reassurances that she would not lose any benefits if she accepted a salaried position.)

The Plan documents unambiguously require that Plaintiff attain the age of 55 before becoming eligible for early retirement with an offset for railroad retirement benefits under section 4.04. "To allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves." *Marks,* at 456. Therefore, Plain-

tiff's claim for equitable estoppel is dismissed.

### E. Penalties and Attorneys Fees

Finally, Plaintiff requests that the Court assess a $100 per day penalty against Defendants for failure to: (1) render its decision on appeal strictly within the time required by 29 C.F.R. 2560.503–1(h) and (i); (2) failure to deliver a copy of the collective bargaining agreement; and (3) failure to produce the medical and life insurance plan documents in violation of ERISA § 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B). Plaintiff requests $23,000 for failing to produce each document for 230 days (March 30, 2005—January 10, 2006).

 Under the civil enforcement provisions of ERISA, the Court may in its discretion order a plan administrator who refuses to supply requested information within 30 days after such request personally liable to the requesting participant in the amount of up to $100 a day from the date of such failure or refusal. 29 U.S.C. § 1132(c)(1)(B).

Contrary to Plaintiff's assertions, this provision does not provide authorization to penalize Defendants for issuing a late appeal decision. Nor does the claims procedure, itself, provide such a remedy. *See* 29 C.F.R. § 2560.503–1(h).

 Further, Plaintiff requests sanctions for Defendants' failure to provide the medical and life insurance plans, rather than the summary description of each plan. Defendants maintain that the summary plan descriptions are, in fact, the plan documents and that no other documents exist. The Court has no reason to disbelieve Defendants and Plaintiff presented no evidence to the contrary. Hence, Defendants will not be penalized for failing to produce these documents.

 Defendants, however, will be assessed a penalty for failing to provide the collective bargaining agreement. Clearly Defendants produced the collective bargaining agreement as it was a part of the administrative record before the Court. As for the prejudice incurred by Plaintiff due to the delay in receiving the documents, the Court notes that Plaintiff requested the collective bargaining agreement in March 30, 2005 in order to prepare for his appeal filed May 20, 2005. After his administrative appeal was denied, Plaintiff began preparing this litigation and under the Court's scheduling order the discovery deadline was March, 2006. Defendants complied with the Court's order and therefore, the Court will not assess a penalty, if any, based on the time period from the denial of the appeal and preparation for litigation. Thus, at most, Plaintiff may have a claim for the 51 days prior to filing his appeal that Defendants failed to produce the collective bargaining agreement.

ERISA § 502(c)(1)(B) authorizes penalties for failures to comply with requests for information the administrator is required to furnish. Defendants argue that the requirement to furnish documents in connection with a benefit appeal appears in 29 C.F.R. § 2560.503–1(h), which states in pertinent part: "... [A] claimant shall be provided, upon request ... all documents, records, and other information relevant to claimant's claim for benefits...." Section 2560.503–1(m)(8) provides that "a document ... shall be considered 'relevant' to a claimant's claim if ... (i) was relied upon in making the benefit determination; (ii) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination." While it is clear that Hicks represented and the Administrative Com-

mittee believed that Plaintiff was a union employee, there is no evidence that the collective bargaining agreement was generated in the course of making the decision. Given this, the Court agrees with Defendants that providing the document prior to Plaintiff's appeal probably would not have changed the Administrative Committee's outcome as they relied more on Plaintiff's termination date than his union employee status.

Nevertheless, the record does support a finding that the Administrative Committee relied on the Plaintiff's union status in making its benefit determination. Therefore, Plaintiff was entitled to the document within in 30 days of his request. Because Defendants failed to provide the document in accordance with ERISA, the Court finds that Plaintiff is entitled to $5,100.00 for the 51 day delay.

 Finally, under ERISA a party may be awarded reasonable attorney fees and costs. The following factors are used to determine if an award is appropriate: (1) degree of opposing parties' culpability, (2) opposing parties' ability to satisfy any award, (3) deterrent effect of an award, (4) whether a common benefit was obtained for participants or a significant legal issue was resolved; and (5) relative merits of the parties' positions. *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1301 (6th Cir.1991).

The Court need look no further than the first factor. Defendants' denial of benefits was not arbitrary and capricious. Consequently, Plaintiff is not entitled to attorney fees and costs.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** in part and **GRANTS** in part both Motions for Summary Judgment.

**IT IS SO ORDERED.**

## *ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION*

This matter came before the Court on Plaintiff Gerald F. Kolpacke's Motion for Reconsideration. On March, 2007, the Court awarded Judgment in Defendants' favor and against Plaintiff on Counts I, II, and III of Plaintiff's Complaint and in Plaintiff's favor and against Defendants for their failure to timely provide Plaintiff with a copy of the collective bargaining agreement in violation of ERISA § 502(c)(1)(B). The Court awarded Plaintiff $5,100.00.

Plaintiff filed a motion for reconsideration and asks the Court to reconsider its ruling that: (1) it was not arbitrary and capricious for the pension plan administrator to rely on the Summary Plan Description ("SPD")to determine that Plaintiff's retirement pension would be offset by future railroad retirement benefits; and (2) equitable estoppel does not prevent Defendants from deducting railroad retirement benefits.

 Eastern District of Michigan Local Rule 7.1(g) provides for reconsideration if the movant demonstrates a palpable defect by which the court and the parties have been misled, and further demonstrates that correcting the defect will result in a different disposition of the case. "A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest, or plain." *Fleck v. Titan Tire Corp.*, 177 F.Supp.2d 605, 624 (E.D.Mich.2001). "[T]he court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication." L.R. 7.1(g)(3).

Plaintiff argues that the Court should find that Defendants' decision to deduct railroad retirement benefits from Plaintiff's pension was arbitrary and capricious for two reasons. First, he asserts that

Defendants could not reasonably rely on the SPD because it was inconsistent with the ERISA Plan ("Plan"). Second, Plaintiff argues that because he relied to his detriment on Defendants' representation that his pension would not be offset by railroad retirement benefits, the doctrine of equitable estoppel should prevent Defendants from reducing his pension.

## A. Summary Plan Description

Plaintiff argues that the Court erred in ruling that Defendant's reliance on the SPD in deciding to deduct railroad benefits was not arbitrary and capricious. He asks the Court to reconsider its finding because: (1) the Plan does not provide for deduction of railroad benefits and, therefore, should control over the SPD; (2) the SPD states that the pension benefit will be reduced by the railroad benefits "[he] was eligible to receive" and that he was not eligible to receive railroad benefits at the time he elected to retire; and (3) the statements in a summary plan document, which conflict with the Plan, should only govern when the provisions are favorable to the employee.

The SPD does state that "[i]f there is a conflict between the provisions of the Plan and this description, the Plan provisions will control in all cases." The Sixth Circuit, has held that "statements in a summary plan are binding [,] and if such statements conflict with those in the plan itself, the summary shall govern." *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir.1988). The Court relied on this principal to determine that the Administrators' reliance on the SPD was not arbitrary or capricious.

Plaintiff argues that the principle underlying the Court's decision in *Edwards* was one of pragmatic fairness. *Haus v. Bechtel Jacobs Co., LLC*, 491 F.3d 557, 564 (6th Cir.2007). In *Edwards*, the company refused to pay benefits due under the sum-mary plan but not due under the original plan. *Edwards*, 851 F.2d at 135. Therefore, the Court found that the summary plan should govern, "otherwise unfairness would flow to the employee for reasonably relying on the summary." *Id.*

In *Andersen v. Chrysler Corp.*, 99 F.3d 846 (7th Cir.1996), the Seventh Circuit noted that the principle of *Edwards* should be limited to particular circumstances and that where the plan itself gives the employee greater benefits and protection, it should control. *Id.* at 858 & n. 10; *see also Coleman v. Aegon Ins. Group*, 71 F.Supp.2d 714, 718 (W.D.Ky.1999)(citing *Andersen* and holding that the equitable principles of ERISA demand that summary plan not control over the plan). The Court finds this reasoning persuasive but not dispositive.

Plaintiff argues that the Plan is more favorable to Plaintiff than the terms of the SPD and therefore, should govern. In its order, this Court found that section 4.05 of the Plan by its terms did not require a deduction of railroad benefits. In so deciding, the Court noted that the other provisions governing retirement specifically provided that section 4.02, under which the normal retirement benefits is calculated, applied and that railroad benefits would be deducted. Nevertheless, the Court found that the terms of the SPD, which provided that railroad benefits would be deducted for any employee who retired before age 55, were binding.

 The Court notes that section 4.05, which applies to Plaintiff, states that a terminated vested employee is entitled to his "Accrued Benefit." Section 1.02 states " 'Accrued Benefit' **means as of any determination date and except for as provided with respect to benefits accrued under Article IVA, the normal retirement Pension computed under Section 4.02(b) on the basis of the Member's Average Compensa-

tion and Credited Service as of that date." (emphasis added). Section 4.02(b) provides for an immediate offset of railroad retirement benefits when an employee elects to retire "on or before his Normal Retirement Date." The Court finds that section 4.05 by reference to "accrued benefit" includes section 4.02 and Defendants can immediately deduct railroad benefits from Plaintiff's pension. This interpretation is consistent with the terms and calculations of the SPD as well as the findings of the Administrative Committee. Therefore, Plaintiff's claim that the Plan is more favorable than the SPD fails.

The Court recognizes that its Order found that railroad benefits could be deducted on other grounds; however, it is not persuaded that Plaintiff identified a "palpable defect" which warrants a different holding. In fact, the Court finds that it erred in concluding that Defendants' reading of section 4.02 in conjunction with section 4.05 was arbitrary and capricious.

## B. Equitable Estoppel

Next, Plaintiff argues that the Court should invoke the equitable estoppel doctrine to prohibit Defendants from deducting railroad benefits from his pension. In a letter, Defendants notified Plaintiff that he was eligible to "retire immediately," the amount of his accrued benefit would be $492.00, and that the "benefit had already been offset for railroad retirement and will not be reduced any further." Defendants admit that this letter, an alleged mistake in calculation, was relied upon by Plaintiff. The mistake was corrected 9 days after Plaintiff elected to retire.

Plaintiff claims that he relied to his detriment on Defendants' letter, which represented that the railroad benefits were already deducted. Thus, Plaintiff claims that no railroad benefits should be deducted even though it is clear that the letter (albeit mistaken about the amount) ap-

prised Plaintiff that railroad benefits were deducted.

Equitable estoppel is only a viable theory when the terms of an ERISA plan are ambiguous. *Sprague v. General Motors Corp.*, 133 F.3d 388, 404 (6th Cir.1998). The elements of equitable estoppel under ERISA are:

(1) [T]here must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Id.*

Plaintiff argues that not only does he meet these elements but that because the Plan and the SPD are inconsistent on whether railroad benefits should be deducted, equitable estoppel should apply.

Although the parties do not dispute that Plaintiff satisfies the reliance factor, all of the elements must be present for the Court to order estoppel. *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir.1991). Plaintiff cannot satisfy the first of these elements; that is, he cannot show that Defendants' inaccurate calculation of his benefit amount "contain[ed] an element of fraud, either intended deception or such gross negligence as to amount to constructive fraud." *Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 430 (6th Cir.2007)(citing *Trs. of Mich. Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587, 591 (6th Cir.2000)).

The letter clearly stated that railroad benefits were deducted. Therefore, it was reasonable for Plaintiff to rely on the amount listed as his benefits. However, it

is certainly not reasonable for him to contend that railroad benefits should not be deducted at all on this basis. At most, Plaintiff has shown that Defendants made an honest mistake.

As for Plaintiff's argument that the principles of estoppel can be applied because the plan terms are ambiguous, the Court finds that there is no ambiguity in the plan documents. The Sixth Circuit mandates this outcome "despite the fact that [D]efendant[s] may have mistakenly made ... written statements contrary to the plan documents." *Sprague,* 133 F.3d at 404. It is this Court's belief that Defendants' letter was not contrary to the documents provided to Plaintiff and simply misstated the amount of benefits Plaintiff would receive. Like the SPD, Defendants' letter stated that railroad benefits would be deducted.

Plaintiff's equitable estoppel claim fails as a matter of law.

For theses reasons, the Court finds no palpable defect in its order. Plaintiff's motion for reconsideration is **DENIED. IT IS SO ORDERED.**